IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| FORREST W. JENKINS, RUSSELL S. VAIL, DAVID E. POLOSKY, GERALD B. BOSTIAN, KRISTINE R. STOCKING, MATTHEW J. FOX, GARY L. and MARY J. TOWLE FAMILY REVOCABLE TRUST, GARY L. TOWLE, M.D., INC., PROFIT SHARING PLAN TRUST, and KELLY W. PRIEST, On Behalf of Themselves and All Other Persons Similarly Situated, Plaintiffs, | § | |
| v. | § | CASE NO. 1:03-cv-321 |
| MACATAWA BANK CORPORATION, Successor by Merger to GRAND BANK, and RICHARD DEARDORFF Defendants. | § | Hon. Robert Holmes Bell |

**PLAINTIFFS' CORRECTED FIRST CONSOLIDATED**
**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs FORREST W. JENKINS, RUSSELL S. VAIL, DAVID E. POLOSKY, GERALD B. BOSTIAN, KRISTINE R. STOCKING, MATTHEW J. FOX, GARY L. and MARY J. TOWLE FAMILY REVOCABLE TRUST, GARY L. TOWLE, M.D., INC., PROFIT SHARING PLAN TRUST, and KELLY W. PRIEST, on behalf of themselves and all similarly situated persons, file their Corrected First Consolidated Class Action Complaint and Jury Demand against MACATAWA BANK CORPORATION, Successor by Merger to GRAND BANK ("Macatawa"), and RICHARD DEARDORFF, and respectfully show as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this case as a class action in which a member of the class of plaintiffs is a citizen of a state different from the Defendants and in which the matter in

controversy exceeds the sum of $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Furthermore, this Court has jurisdiction of this civil action because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a). This Court may also exercise supplemental jurisdiction under 28 U.S.C. § 1367.

2. Venue is proper as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. 28 U.S.C. § 1391.

## II. BACKGROUND

3. This case arises from the collapse in early 2003 of Trade Partners, Inc. (hereinafter "Trade Partners," which as used in this complaint shall include Trade Partners, Inc. and its affiliated entities), a company specializing in "alternative investment opportunities." Trade Partners had a longstanding "strategic alliance" with Macatawa, a Michigan bank that, like Trade Partners, was based in Grand Rapids, Michigan.

4. Trade Partners began to offer investments based on viatical settlements in 1996. In a viatical settlement, a terminally-ill insured sells his or her death benefit under a life insurance policy to a third party in return for immediate cash. The death benefits are purchased at a substantial discount, which creates the potential profit to the purchaser to be realized only upon the insured's death.

5. Trade Partners itself typically did not deal with the insureds directly. Instead, Trade Partners relied on Kelco, a Kentucky company, to furnish an "inventory" of insurance policies available for investment.

6. Initially, viatical investments offered through Trade Partners were structured so that the investor was named the irrevocable beneficiary of record for all or a definite portion of a specific

insurance policy's death benefits. In 1998, Trade Partners created a trust — TPI Grand Trust — to stand as direct beneficiary of the death benefits, and thereafter investors in "Life Settlement Contracts" received units in the trust instead of a direct right to death benefits of a specific insurance policy. Trade Partners also created various other viatical-based investment vehicles, such as "monthly income" programs and partnerships which promised investors their investments were secured by the right to death benefits in insurance policies owned by Trade Partners.

7. Each of the investment vehicles shared common, significant traits, including: Their safety depended wholly on Trade Partners to own and control the insurance policies, including maintaining the policies through timely payment of premiums. Beginning in 1998, Trade Partners established reserve and escrow accounts at Macatawa to be used to set aside money to pay the premiums that would become due for the policies. Trade Partners was supposed to set aside at least enough funds to pay the premiums likely to become due during the insureds' various life expectancies. In fact, Trade Partners was contractually obligated to do so for most of the viatical investments.

8. The viatical investments, however, were not secure. Trade Partners failed to set aside enough money to pay premiums, instead relying on cash flow (including "new money" from investors) to pay premiums on policies already held within its portfolio — making Trade Partners a classic "Ponzi" scheme. Like most such schemes, it collapsed when Trade Partners could no longer generate adequate cash flow to pay premiums, threatening the value of the entire portfolio if the policies were allowed to lapse.

9. Macatawa played several key roles in the scheme. First, it acted as escrow agent, ostensibly to protect investors by ensuring that Trade Partners was carrying out its essential

duties. Second, Macatawa acted as co-trustee of TPI Grand Trust, the beneficiary of record for most of the insurance policies offered by Trade Partners. Third, Trade Partners held its operating, escrow, and reserve accounts at Macatawa. By virtue of these three roles, Macatawa had intimate access to and knowledge of the details of Trade Partners' operations.

10. Deardorff, formerly a Vice President of Macatawa, presided over the bank's trust department and was authorized to handle the Trade Partners relationship for the bank.

## III. PARTIES

11. Plaintiff Forrest W. Jenkins, an individual, resides in Harris County, Texas. He invested in TPI Monthly Income XXII, LLC, TPI Monthly Income XXIII, LLC, and TPI Monthly Income XXVII, LLC. He also had an investment in Life Settlement Contracts through Trade Partners.

12. Plaintiff Russell S. Vail, an individual, resides in Harris County, Texas. In 2000, he purchased a membership in TPI Monthly Income XXII, LLC. He also had an investment in Life Settlements Contracts through Trade Partners.

13. Plaintiff David E. Polosky, an individual, resides in North Carolina. He purchased several Life Settlement Contracts through Trade Partners between 1999 and 2001.

14. Plaintiff Gerald B. Bostian, an individual, resides in Edmond, Oklahoma. He purchased several Life Settlement Contracts through Trade Partners between 1997 and 2001.

15. Plaintiff Kristine R. Stocking, an individual, resides in Phoenix, Arizona. In 2001, she purchased a Life Settlement Contract through Trade Partners.

16. Plaintiff Matthew J. Fox, an individual, resides in Grand Rapids, Michigan. He purchased Life Settlement Contracts through Trade Partners in 1999.

17. Plaintiff Gary L. and Mary J. Towle Family Revocable Trust is a trust formed under the laws of the State of California. Its trustees and beneficiaries reside in Nevada. It purchased several Life Settlement Contracts through Trade Partners in 2000.

18. Plaintiff Gary L. Towle, M.D., Inc. Profit Sharing Trust is a trust formed under the laws of the State of California. Its trustees and beneficiaries reside in Nevada. It purchased several Life Settlement Contracts through Trade Partners in 2000.

19. Plaintiff Kelly W. Priest, an individual, resides in Los Gatos, California. He purchased a membership in TPI Monthly Income through Trade Partners in 2001.

20. Defendant Macatawa Bank Corporation, Successor by Merger to Grand Bank, is a Michigan corporation doing business in the State of Michigan and the County of Kent. Macatawa has already answered and appeared in this lawsuit.

21. Defendant Richard Deardorff, an individual, resides in Ooltewah, Tennessee. Deardorff has already answered and appeared in this lawsuit.

## IV. FACTS

22. A viatical upsets the traditional roles and incentives inherent in life insurance. The beneficiary of the underlying policy, instead of being a person with a close relationship to the insured (*e.g.,* family member or employer), is an unrelated third party. The seller (the policy's owner, who may also be the insured), having already received his cash, no longer has an incentive to keep the policy in force, nor to file a claim for death benefits upon the insured's death. The new beneficiary, to protect his rights, must assume the burdens and rights of policy ownership: the duty to pay premiums, the right to designate the policy's beneficiary, and the responsibility of filing a proper claim upon the insured's death. If the policy terminates for any reason before maturity, the buyer loses his investment.

23. Trade Partners' viatical investment program further fractured and complicated these roles. Trade Partners relied on an unrelated company, Kelco, to make the viatical settlements with the policy owners/insureds. With respect to Life Settlement Contracts — the simplest form of viatical investment offered by Trade Partners — Trade Partners acted as agent between its investors and Kelco: Trade Partners' investors gained an interest (directly until 1998, and thereafter indirectly, through TPI Grand Trust) in the death benefits, and Trade Partners and Kelco received investors' cash, including a markup over what Kelco had paid for the policy. As agent for its investors, Trade Partners agreed to administer the policies for the investors' benefit, by (among other responsibilities) paying premiums, monitoring the insureds, and filing claims for death benefits with the insurance companies. Trade Partners was compensated for these duties through the markup.

24. At all relevant times, Trade Partners had fiduciary duties to protect the interests of its investors, including by maintaining adequate cash reserves to pay premiums reasonably expected to become due on the policies held within the viatical portfolio, and by obtaining ownership of record over the policies. By June 2000, Trade Partners had expressly contracted to fund a premium reserve account with 100% of the premiums, based on the investor's portion of the identified policy, that may become due during the insured's life expectancy.

25. Trade Partners also created and sold other investment vehicles based on the viatical portfolio, including the "Monthly Income Program" ("MIP"), "Inventory Loans," and numerous "Monthly Income" partnerships (organized as Michigan limited liability companies) ("LLCs"). These programs loaned investor money to Trade Partners in exchange for periodic interest payments and return of principal at the end of a fixed, relatively short (typically 24 month) term. Trade Partners' repayment obligations were secured by the viatical portfolio.

26. Macatawa acted as escrow agent for the investors with respect to the investments, and as co-trustee of TPI Grand Trust. As escrow agent, Macatawa was charged with the responsibility of reviewing designated presentment documents for compliance with the terms of the escrow agreements before releasing investor funds to Trade Partners.

27. The Trade Partners investment program, and the Life Settlement Contracts in particular, did not function in compliance with Trade Partners' and Macatawa's duties. Instead of being a low-risk, tightly controlled and monitored investment program undertaken in conjunction with a respected bank, it was the opposite: Investor deposits and funds from premium escrow accounts were diverted to Trade Partners' operating accounts. Funds that Macatawa and Deardorff knew should be released only into premium escrow accounts were regularly and systematically allowed to be released to Trade Partners for use in whatever manner Trade Partners saw fit. Macatawa and Deardorff did nothing to correct the problems, even though they knew or should have known about them.

28. Furthermore, Trade Partners failed to obtain "complete ownership" of many of the viaticated policies; instead, Kelco maintained record ownership. (As the Honorable Magistrate Judge William F. Sanderson, Jr. of the United States District Court for the Northern District of Texas found, "[D]ue to the fact that KELCO failed to notify the issuing insurance companies of the change in the name of the owner-beneficiary on many of the policies purchased by Trade Partners and Trade Partners' failure to require KELCO to comply, KELCO is shown as the owner of such policies in the books and records of the issuing insurers." *See* Report and Recommendation of United States Magistrate Judge, May 28, 2003, in *Securities and Exchange Commission v. Larry W. Tyler, et al.*, C.A. 3-02-CV-282-P, In the United States District Court

for the Northern District of Texas, Dallas Division, p. 13.) This elementary deficiency undermined the safety of the viatical portfolio.

29. On July 8, 1999, the State of Indiana Division of Securities entered a Cease and Desist Order, Cause No. 99-0211 CD, against Trade Partners with respect to the viatical investments, noting that such investments were unlawfully being sold in Indiana as unregistered and non-exempt securities.

30. On May 19, 2000, federal agents raided the offices of Trade Partners and Kelco, as part of a national initiative known as "Operation Cleansheet." The operation shut down Kelco as a supplier of new viatical settlements, forcing Trade Partners to turn to novel, non-viatical vehicles (*e.g.*, the "Real Estate Acquisition Program," "Sokjara," and "IWM") to continue the Ponzi scheme by attracting new investment money for cash flow. Trade Partners continued to sell viatical investments from its existing portfolio of Kelco policies, and attempted to develop relationships with new viatical "providers," especially outside the United States. Because Trade Partners originally failed to set aside adequate funds to pay premiums on its existing portfolio, Trade Partners depended on cash flow from new investments to maintain the portfolio.

31. On October 4, 2001, the State of Wisconsin Division of Securities petitioned for a Cease and Desist Order, File No. S-00267 (EX), naming Trade Partners and the TPI Grand Trust, and their principals, as respondents. Grand Bank was also named and identified as the escrow agent for Trade Partners and trustee for TPI Grand Trust. The petition alleged that the viatical investments and interests in the trust were illegal sales of unregistered securities.

32. On July 9, 2003, Trade Partners entered into a Consent Order to Cease and Desist with the Michigan Office of Financial Insurance Services, Agency No. 04-469-M. The order found, among other things, that Trade Partners engaged in the business of selling unregistered, non-

exempt securities for the account of others or its own account but was not registered as a securities broker-dealer.

33. The Plaintiff Class are or were investors in these viatical-related investments, including the Monthly Income Program, Inventory Loans, the LLCs, and/or the Life Settlement Contracts.

34. At all relevant times, Macatawa served as trustee, fiduciary and escrow agent with respect to these viatical-based investments. Deardorff was head of Macatawa's trust department and was responsible for the Trade Partners relationship.

35. Each of the class members was in privity of contract with Macatawa or, in the alternative, was an intended third-party beneficiary of a contract with Macatawa.

36. Among the responsibilities of Macatawa and Deardorff were: (1) ensuring that all escrow conditions were met before releasing investor money to Trade Partners or its affiliates; (2) accepting payment from investors for their investment interests; (3) making payments to investors on their investments; (4) communicating with investors; and (5) ensuring that the specific investment criteria were adhered to. Defendants had a duty to carry out these responsibilities.

37. Notwithstanding its obligations as trustee, fiduciary and escrow agent, Macatawa failed to protect the investors in the most basic and essential ways. Macatawa knew that Trade Partners never maintained adequate funds to pay the premiums necessary to support the value of the viatical portfolio, and that Trade Partners — in violation of its contractual obligations — did not have record ownership for many of the insurance polices. Despite this knowledge, Macatawa continued to release millions of dollars of investor money to Trade Partners.

38. On May 23, 2003, Michael J. Quilling — as Receiver for Advanced Financial Services, Inc. — testified at a hearing in a proceeding styled *Securities & Exchange Commission v. Larry*

*W. Tyler et al.*, C.A. No. 3-02CV-0282, In the United States District Court for the Northern District of Texas, Dallas Division, before the Hon. William Sanderson, Magistrate Judge. The hearing concerned Mr. Quilling's motion to market and sell insurance policies sold through Trade Partners. At that hearing, Mr. Quilling agreed that "Makatowa [sic] Bank was a big part of this mess and was the one who may eventually make these investors whole." *See* p. 112:19-22. He stated, "I believe they [Macatawa] [a]re accountable for this disaster and that ultimately I believe they're going to be the solution to making the investors whole if these policies lapse." *See* p. 68:18-22.

39. Mr. Quilling also testified, based on his investigation of Trade Partners, that in most instances Trade Partners had not been listed as the owner of the viaticated policy on the insurance company's records. See p. 25:1-8, p. 30:19-25, p. 46:14-18, p. 52:15-22.

## V. <u>CLASS ALLEGATIONS</u>

40. Pursuant to FRCP 23, this action meets the requirements for certification as a class action. Plaintiffs seek the certification of a class of all persons or entities, excluding officers or directors of Trade Partners or Macatawa, who purchased or otherwise acquired an interest in the following viatical investment products offered by or through Trade Partners: TPI Monthly Income I through XXXII, LLCs; Life Settlement Contracts; Monthly Income Program ("MIP"); and Inventory Loans (the "Plaintiff Class").

41. The Plaintiff Class alleged is so numerous that joinder of all members is impracticable. According to information gathered by the Trade Partners receiver, the Plaintiff Class consists of over one thousand investors.

42. There are questions of law and fact common to each class member that predominate over any questions affecting only individual class members. Such common questions include but are

not limited to: (1) the fiduciary duties owed by Trade Partners to the Plaintiff Class, and Defendants' knowledge of those duties; (2) whether Trade Partners breached its fiduciary duties; (3) whether the Defendants participated in any such breaches of fiduciary duties by Trade Partners; (4) whether the Defendants breached their obligations to the Plaintiff Class under escrow agency agreements; (5) whether Defendants' conduct with respect to the Plaintiff Class's funds was negligent or grossly negligent; (6) whether Defendants breached their fiduciary duties to the Plaintiff Class; (7) whether the investments at issue were securities; (8) if so, whether such securities were registered; (9) whether Defendant Macatawa was a seller or directly or indirectly controlled the seller of the investments; (10) whether Defendant Deardorff was an agent who materially aided in the sale of the investments; (11) whether Defendants' conduct caused injury and damages to the Plaintiff Class; and (12) the appropriate remedies and measure of damages.

43. The claims of the individual Plaintiffs are typical of the claims of each class member and the Plaintiffs have no interest adverse to the interests of other members of the Plaintiff Class.

44. Plaintiffs will fairly and adequately protect the interests of each class member and have retained counsel experienced and competent in the prosecution of class action litigation.

45. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of the controversy.

## VI. CAUSES OF ACTION

### Negligence and Gross Negligence
### (Macatawa and Deardorff)

46. Defendants owed a common-law duty to perform with ordinary care the things Macatawa agreed to do in its contracts with the Plaintiff Class, Trade Partners, Inc., and Trade Partners' affiliates. Defendants failed to exercise such ordinary care in the performance of the contractual duties, and were therefore negligent. Defendants' negligence foreseeably and proximately injured the Plaintiffs and the Plaintiff Class.

47. Moreover, Defendants' conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to the investors. This conduct is gross negligence under the law.

### Breach of Contract
### (Macatawa)

48. Defendant Macatawa breached its contractual obligations with Plaintiffs and the Plaintiff Class and has caused them damages.

49. Moreover, and pleading in the alternative, Plaintiffs and the Plaintiff Class are third-party beneficiaries of the contracts between Defendant Macatawa and Trade Partners. Defendant Macatawa breached its contractual obligations with Trade Partners, thereby causing the Plaintiffs and the Plaintiff Class damages.

50. All conditions precedent have been performed or have occurred.

### Breach of Fiduciary Duty
### (Macatawa and Deardorff)

51. Defendants breached their fiduciary duties to Plaintiffs and the Plaintiff Class and have caused them damages.

**Knowing Participation in Breach of Fiduciary Duty**
**(Macatawa and Deardorff)**

52. Trade Partners was a fiduciary with respect to the Plaintiffs and the Plaintiff Class. For example, Trade Partners was an agent of the Plaintiffs and the Plaintiff Class with respect to the Life Settlement Contract investments. Furthermore, a Trade Partners affiliate was co-trustee of the TPI Grand Trust. Likewise, another Trade Partners affiliate acted as managing member and fiduciary of the monthly income LLCs. These fiduciaries breached their duties, causing the Plaintiffs and the Plaintiff Class damages. Defendants knowingly participated in these breaches of fiduciary duty, and are therefore liable for the resulting damages.

**Unlawful Sale of Unregistered Securities in Violation of the Uniform Securities Act**
**(Macatawa and Deardorff)**

53. The investments at issue were securities illegally sold in violation of Section 301 of the Michigan Uniform Securities Act.

54. Defendant Macatawa was a seller, or a person who directly or indirectly controlled a seller, of unregistered securities in violation of the Michigan Uniform Securities Act. Defendant Deardorff was an agent who materially aided in the sale of unregistered securities in violation of the Michigan Uniform Securities Act. Accordingly, Defendants are liable under Section 410 of that Act for the consideration paid for the securities, together with interest at 6% per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of income received on the security.

55. WHEREFORE, PREMISES CONSIDERED, Plaintiffs FORREST W. JENKINS, RUSSELL S. VAIL, DAVID E. POLOSKY, GERALD B. BOSTIAN, KRISTINE R. STOCKING, MATTHEW J. FOX, GARY L. and MARY J. TOWLE FAMILY REVOCABLE TRUST, GARY L. TOWLE, M.D., INC., PROFIT SHARING PLAN TRUST, and KELLY W.

PRIEST, on behalf of themselves and the Plaintiff Class, respectfully request that this Honorable Court:

A. Award Plaintiffs their actual damages.

B. Award Plaintiffs prejudgment interest.

C. Award Plaintiffs their expenses, attorneys' fees and costs as provided by applicable law.

D. Award Plaintiffs such other and further relief to which they may be entitled under the circumstances.

SIGNED this 22nd day of March, 2006.

Respectfully submitted,

**MOULTON & MEYER, L.L.P.**

By: /s/ Cynthia R. Levin Moulton
Cynthia R. Levin Moulton
Bar Card No.12253450
Jeffrey D. Meyer
Bar Card No. 00788048
600 Travis Street, Suite 6700
Houston, Texas 77002
Telephone: (713) 353-6699
Telecopier: (713) 353-6698

**NICKENS, KEETON, LAWLESS, FARRELL & FLACK, LLP**

Jacks C. Nickens, Jr.
Bar Card No. 15013800
Thomas M. Farrell
Bar Card No. 06839250
600 Travis Street, Suite 7500
Houston, Texas 77002
Telephone: (713) 571-9191
Telecopier: (713) 571-9652

**HENRY L. GUIKEMA, P.C.**

Henry L. Guikema
#P14462
125 Ottawa Ave. NW, Suite 333
Grand Rapids, MI 49503
Telephone: (616) 235-2601

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing instrument has been delivered to the following parties and counsel of record by email via electronic filing on this 22nd day of March, 2006:

J.A. Cragwall, Jr.
Warner, Norcross & Judd, L.L.P.
900 Fifth Third Center
111 Lyon, N.W.
Grand Rapids, MI 49503

Michael J. Quilling
Quilling. Selander.Cummiskey. Lownds
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

Thomas F. Koernke
Koernke & Crampton, P.C.
940 Monroe Ave., NW, Suite 250
Grand Rapids, MI 49503

John A. Smietanka
Smietanka & Buckleitner
O-155 445th Street, SW, Suite 1
Grandville, MI 49418

/s/ Cynthia R. Levin Moulton
Cynthia R. Levin Moulton