UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re TRADE PARTNERS, INC.,                    MDL Docket No. 1846
INVESTORS LITIGATION,                          File No. 1:07-CV-738
                                                      1:07-CV-750
                                                      1:07-CV-751
                                                      1:07-CV-775

                                               HON. ROBERT HOLMES BELL

_____/

# **O P I N I O N**

On June 26, 2007, the Judicial Panel on Multidistrict Litigation ("JPML") transferred

four cases involving individuals who had invested with Trade Partners Inc. ("TPI") then

pending outside of the Western District of Michigan to be consolidated with *Forrest W.*

*Jenkins, et al. v. Macatawa Bank Corp., et al.*, File No. 1:03-CV-321, which was already

pending in the Western District of Michigan. This matter is before the Court on the motions

to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(2) that were filed in each of the transferor courts prior to the multidistrict litigation

("MDL") transfer.[1] Defendants Macatawa Bank Corporation and Macatawa Bank,

---

[1]The motions to dismiss presently before the Court are: Defendants Macatawa Bank
Corporation and Macatawa Bank's motion to dismiss Plaintiffs' second amended complaint
for lack of personal jurisdiction (File No. 1:07-CV-738, Dkt. No. 14), Defendant Macatawa
Bank Corporation's motion to dismiss for lack of person jurisdiction (File No. 1:07-CV-750,
Dkt. No. 1), Defendants Macatawa Bank Corporation and Macatawa Bank's motion to
dismiss Plaintiffs' second amended complaint for lack of personal jurisdiction (File No.
(continued...)

hereinafter Macatawa, contend that the transferor courts lack personal jurisdiction over them. For the reasons that follow, all of Macatawa's motions to dismiss for lack of personal jurisdiction are denied.

## I.

This suit arises from the sale of viatical based investments by TPI between 1996 and 2003. Defendant Macatawa Bank is a member bank of Defendant Macatawa Bank Corporation. Macatawa Bank is the successor by merger to Grand Bank. Grand Bank provided escrow services for funds involved in viatical based investments made with TPI. Macatawa Bank is, and Grand Bank was, a Michigan bank. Macatawa Bank only has assets, offices, and personnel in Michigan. Macatawa Bank Corporation is a Michigan corporation and only has offices in Michigan.[2]

On November 8, 2006, the Court denied class certification in the *Jenkins* lawsuit. Shortly after the denial of class certification four lawsuits were filed by groups of individual plaintiffs in California, Oklahoma, and Texas. The first lawsuit was filed in Los Angeles Superior Court on November 14, 2006, and was removed to the Central District of

---

[1](...continued)
1:07-CV-750, Dkt. No. 2), Defendant Macatawa Bank Corporation's motion to dismiss for lack of personal jurisdiction (File No. 1:07-CV-751, Dkt. No. 4), and Defendants Macatawa Bank Corporation and Macatawa Bank's motion to dismiss for lack of personal jurisdiction (File No. 1:07-CV-775, Dkt. No. 6).

[2]Many of the events relevant to these motions occurred prior to the merger; however, for the sake of simplicity throughout the remainder of this opinion the Court refers to Grand Bank as Macatawa.

California on December 28, 2006. The lawsuit removed to the Central District of California is captioned, *James Lee and Rose Marie Myers, et al. v Macatawa Bank Corp., et al.*, File No. 1:07-CV-775,[3] and the plaintiffs in that lawsuit are referred to as the *Myers* plaintiffs. Two lawsuits were filed in the Western District of Oklahoma. The first Oklahoma lawsuit was filed on November 15, 2006, and is captioned, *Steven M. Adamson, et al. v. Macatawa Bank Corp., et* al, File No. 1:07-CV-750. The plaintiffs in that lawsuit are referred to as the *Adamson* plaintiffs. The second Oklahoma lawsuit was filed on January 29, 2007, and is captioned *Eddie Elkins, et al. v. Macatawa Bank Corp.*, Filed No. 1:07-CV-751. The plaintiffs in that lawsuit are referred to as the *Elkins* plaintiffs. A fourth lawsuit was filed in the Northern District of Texas on November 29, 2006. The lawsuit filed in the Northern District of Texas is captioned, *Frank V. Bailey, et al. v. Macatawa Bank Corp., et al.*, File No. 1:07-CV-738, and the plaintiffs in that suit are referred to as the *Bailey* plaintiffs. In each of these four lawsuits Macatawa moved to dismiss based on a lack of personal jurisdiction. Concurrent with filing the motions to dismiss, Macatawa sought to have the JPML transfer these four lawsuits to the Western District of Michigan. On June 26, 2007, the JPML ordered the transfer of these four lawsuits to the Western District of Michigan for consolidated pretrial proceedings. The transferor courts did not rule on Macatawa's motions to dismiss prior to the JPML's transfer order. On October 4, 2007, the Court held a hearing on these motions to dismiss.

---

[3]The file numbers referenced in this opinion are the file numbers assigned to these cases in the Western District of Michigan.

## II.

When analyzing questions of federal law "in a federal multidistrict litigation[,] there is a preference for applying the law of the transferee district . . . ." *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 912 n.17 (6th Cir. 2003) (citations omitted). *Accord In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.,* 97 F.3d 1050, 1055 (8th Cir. 1996); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987), *aff'd on other grounds sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989). Despite this preference "it is not clear that precedent 'unique' to a particular circuit and arguably divergent from the predominant interpretation of a federal law . . . should be applied to . . . claims that originated in other circuits[.]" *Id.* (citation omitted). The parties completed briefing on these motions to dismiss before the JPML's transfer order. The Court's first order in this MDL action allowed any party to file an additional brief on the motions to dismiss. (File No. 1:07-MD-1846, Dkt. No. 3, July 12, 2007 Order ¶ 14.) No party elected to file such a brief; thus, no party has contended that the Sixth Circuit's precedent applicable to these motions to dismiss is "unique."[4] The parties briefed these motions under the federal law of the transferor courts and in reviewing the parties' briefs the Court has not found any of the applicable Sixth Circuit precedent to be "unique" as compared to the law of the transferor

---

[4]At the October 4, 2007, hearing, the Court indicated its intent to analyze the questions of federal law presented in the motions to dismiss under Sixth Circuit precedent. Even after being placed on notice of the Court's intent, no party contended that the Sixth Circuit precedent applicable to these motions to dismiss is "unique."

circuits. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 455 F. Supp. 2d 709, 715-16 (N.D. Ohio 2006) (analyzing under *In re Cardizem* whether the Sixth Circuit was "unique" and divergent from the predominant interpretation on a particular issue). Therefore, the Court will apply the law of the Sixth Circuit on questions of federal law that arise as part of these motions to dismiss for lack of personal jurisdiction.

## III.

In matters consolidated for pretrial proceedings pursuant to 28 U.S.C. § 1407, "'the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer.'" *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987) (quoting *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976)). Therefore the Court must determine whether the transferor courts in the *Adamson, Bailey, Elkins*, and *Myers* lawsuits have personal jurisdiction over Macatawa.

Personal jurisdiction can be either "general" or "specific." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985). The *Adamson*, *Bailey*, *Elkins*, and *Myers* plaintiffs only contend that the transferor courts have specific personal jurisdiction over Macatawa. (File No. 1:07-CV-738, Dkt. No. 23, *Bailey* Resp. 7; File No. 1:07-CV-750, Dkt. No. 3, *Adamson* Resp. 6; File No. 1:07-CV-751, Dkt. No. 5, *Elkins* Resp. 5; File No. 1:07-CV-775, Dkt. No. 8, *Myers* Resp. 5.) "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the

defendant's contacts with the forum.'" *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

"A court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)). "The plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant." *Id.* (citing *Calphalon Corp.*, 228 F.3d at 721, and *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The Court has determined that these motions to dismiss for lack of personal jurisdiction can be decided based upon the written submissions, without an evidentiary hearing.[5] Therefore, the Court "'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). If the plaintiff meets the burden of making a prima facie showing that personal jurisdiction exists, then the motion to dismiss should be denied, "'notwithstanding any controverting presentation by the moving party.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)). *Accord Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006).

---

[5]Of course, this determination does not precluded Macatawa from moving for an evidentiary hearing after the completion of discovery, if the materials obtained in the course of discovery so warrant.

## A. Statutory Requirements

The *Adamson*, *Bailey*, *Elkins*, and *Myers* cases are all in federal court based on diversity jurisdiction. "In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." *Intera Corp.*, 428 F.3d at 615 (citing *Calphalon Corp.*, 228 F.3d at 721, and *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)). *See also* Fed. R. Civ. P. 4(e)(1), (k)(1)(A). In matters consolidated for pretrial proceedings pursuant to 28 U.S.C. § 1407, on questions of state law, "the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.,* 97 F.3d at 1055 (citing *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981)). *Accord Toll Bros., Inc. v. Dryvit Sys., Inc.*, 432 F.3d 564, 568 n.4 (4th Cir. 2005).

### 1. California - *Myers* Plaintiffs

California's jurisdictional statute, Cal. Civ. Proc. Code § 410.10,[6] permits California courts to exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Due Process Clause of the Fourteenth Amendment. *Vons Companies, Inc. v. Seabest Foods, Inc.*, 14 Cal.4th 434, 444, 926 P.2d 1085 (1996); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). "Because California's long-arm jurisdictional statute

---

[6]California's jurisdictional statute provides:
A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.
Cal. Civ. Proc. Code § 410.10 (West 2007).

is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Dole Food Co.*, 303 F.3d at 1110 (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998)). Therefore, the statutory analysis of whether the California court has jurisdiction over Macatawa is coextensive with the due process analysis, which is addressed in Part III.B.2, *infra*.

### 2. Oklahoma - *Adamson* and *Elkins* Plaintiffs

Oklahoma's jurisdictional statute, Okla. Stat tit. 12, § 2004(F),[7] permits Oklahoma courts to exercise personal jurisdiction to the outer limits permitted by the Due Process Clause of the Fourteenth Amendment. *Gilbert v. Sec. Fin. Corp. of Okla.*, 2006 OK 58, ¶ 16, 152 P.3d 165 (2006); *see also United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988)). Therefore, the statutory analysis of whether the Oklahoma court has jurisdiction over Macatawa is coextensive with the due process analysis, which is addressed in Part III.B.3, *infra*.

### 3. Texas - *Bailey* Plaintiffs

---

[7]Oklahoma's jurisdictional statute provides:
A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.
Okla. Stat. Ann. tit. 12 § 2004(F) (West 2007).

Texas' jurisdictional statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.042,[8] permits Texas courts to exercise personal jurisdiction "'as far as the federal constitutional requirements of due process will permit.'" *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, – S.W.3d –, 2007 WL 2457843, at *2, 2007 Tex. LEXIS 796, at *4 (Tex. Aug. 31, 2007) (citing *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). *Accord Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005). Because Texas's long-arm statute is coextensive with the federal due process requirements, the two step analysis under state and federal law collapse into the single due process inquiry. *PHC-Minden*, 2007 WL 2457843, at *2, 2007 Tex. LEXIS 796, at *4; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000). Therefore, the statutory analysis of whether the Texas court has jurisdiction over Macatawa is coextensive with the due process analysis, which is addressed in Part III.B.4, *infra*.

## B.    Due Process Requirements

In order to subject a nonresident defendant to personal jurisdiction "due process requires only that . . . he have certain minimum contacts with [the forum] such that the

---

[8]Texas' jurisdictional statute for nonresident businesses provides:
In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
> (2) commits a tort in whole or in part in this state; or
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.
Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2007).

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### 1.    The *Southern Machine Company* Three Part Test

In *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit established a three part test for determining whether the exercise of specific personal jurisdiction comports with due process.

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, – F.3d –, 2007 WL 2791166, at *3, 2007 U.S. App. LEXIS 22801, at *8-9 (6th Cir. Sept. 27, 2007) (quoting *S. Mach. Co.*, 401 F.2d at 381).

### a.    Purposeful Availment

"The purposeful availment requirement serves to protect a defendant from being haled into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts." *Intera Corp.*, 428 F.3d at 616 (citing *Calphalon Corp.*, 228 F.3d at 722).  In evaluating whether a defendant has purposefully availed itself of the forum, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" must be considered.  *Burger King Corp.*, 471 U.S. at 479.

> [W]here a defendant "has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Id.* at 476 (internal citation omitted). In addition, physical presence in a forum state is not required, and the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* (citations omitted).

*Air Prods. & Controls*, 2007 WL 2791166, at *4, 2007 U.S. App. LEXIS 22801, at *11-12. The mere fact that the defendant entered into a contract with a resident of the forum state, however, does not mean that the defendant purposefully availed itself of the "benefits and protections" of forum law. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 151 (6th Cir. 1997).

Purposeful availment can also be analyzed under the "effects test" articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *Air Prods. & Controls*, 2007 WL 2791166, at *5-6, 2007 U.S. App. LEXIS 22801, at *15-16. The "effects test" provides that jurisdiction in a given forum comports with due process if the defendant's intentional actions were aimed at the forum and the brunt of the harm was felt in the forum. *Reynolds*, 23 F.3d at 1120. The Sixth Circuit has "narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prods. & Controls*, 2007 WL 2791166, at *6, 2007 U.S. App. LEXIS 22801, at *16 (citations omitted). "Although the 'effects test' has been limited, the existence of intentional tortious conduct nonetheless 'enhances' a party's other contacts with the forum state for purposes of a purposeful availment analysis." *Id.* at *6, 2007 U.S. App. LEXIS 22801, at *17 (citing *Scotts Co. v. Aventis S.A.*, 145 F. App'x. 109, 113 n.1 (6th Cir. 2005) (unpublished)).

### b.    Arising From

The second part of the *Southern Machine* test requires that the cause of action arise

from the defendant's activities in the forum.  "'[T]he "arising from" requirement is satisfied

if the cause of action is "related to" or "connected with" the defendant's forum contacts.'"

*Youn*, 324 F.3d at 419 (quoting *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882

F.2d 1087, 1091 n.2 (6th Cir. 1989)).  The "arising from" requirement is also satisfied

"'when the operative facts of the controversy arise from the defendant's contacts with the

state.'" *Intera Corp.*, 428 F.3d at 617 (quoting *Calphalon Corp.*, 228 F.3d at 723).  This as

a "lenient standard."  *Air Prods. & Controls*, 2007 WL 2791166, at *6, 2007 U.S. App.

LEXIS 22801, at *18;  *Bird v. Parsons,* 289 F.3d 865, 875 (6th Cir. 2002).

### c.    Reasonableness

The third part of the *Southern Machine* test requires that "'the acts of the defendant

or consequences caused by the defendant must have a substantial enough connection with

the forum state to make the exercise of jurisdiction over the defendant reasonable.'"  *Youn*,

324 F.3d at 419 (quoting *S. Mach. Co.*, 401 F.2d at 381).  "Generally, when considering

whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a

court must consider several factors including the following: (1) the burden on the defendant;

(2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other

states' interest in securing the most efficient resolution of the controversy."  *Intera Corp.*,

428 F.3d at 618 (citing  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)).

"If prongs one and two of *Southern Machine* test are satisfied, then there is an inference that the reasonableness prong is satisfied as well." *Id.* (citing *CompuServe*, 89 F.3d at 1268). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.

### 2. California - *Myers* Plaintiffs

#### a. Purposeful Availment

The *Myers* plaintiffs contend that the following alleged facts make a prima facie showing that Macatawa purposefully availed itself of the privilege of doing business in California. The *Myers* plaintiffs allege that Macatawa participated in the marketing of TPI's products, acted as escrow agent, performed bank activities essential to the operation of TPI's products, and acted as co-trustee of the TPI Grand Trust, which was the beneficiary of record for most of the viaticated insurance policies. (File No. 1:07-CV-775, Dkt. No. 13, *Myers* Second Am. Compl. ¶ 14.) Macatawa reviewed TPI's marketing materials that described Macatawa's role in TPI's products. (*Myers* Resp., Ex. C, Deardroff Dep. 34:24-35:20.) An officer in Macatawa's trust department, Richard Deardorff, appeared in a marketing video produced by TPI. (*Id.* at 36:3-40:25.) Individuals who sold TPI's products in California traveled to Michigan and met with representatives of TPI and Macatawa. (*Myers* Resp., Ex. D., Hammon Aff. ¶¶ 2-3, 5; *Myers* Resp., Ex. E, Block Aff. ¶¶ 2-3.)

From the circumstances of these meetings, Macatawa would have understood that these individuals were from California and that they would use the information Macatawa provided to market TPI's products, including Macatawa's escrow services, to California residents. (Hammon Aff. ¶ 5.) Macatawa was a party to over eighty escrow agreements with California residents. (*Myers* Resp., Ex. A.) Each escrow agreement included the investor's address, thereby alerting Macatawa that it was transacting with California residents. (*E.g.*, *Myers* Resp., Ex. A, Myers Escrow Agreement.) As part of each of these transactions, Macatawa accepted deposits from the California residents. Macatawa disputes many of the foregoing allegations and rebuts some of the foregoing with competing affidavits. Those competing affidavits are without moment as to the motion to dismiss, because on a motion to dismiss decided without an evidentiary hearing the plaintiff's evidence is viewed in the light most favorable to the plaintiff and the court does not weigh controverting assertions made by the party seeking dismissal. *Intera Corp.*, 428 F.3d at 614; *Theunissen*, 935 F.2d at 1459; *Serras*, 875 F.2d at 1214.

The evidence offered by the *Myers* plaintiffs, when viewed in the light most favorable to the *Myers* plaintiffs, suggests the following. Macatawa knowingly participated in TPI's marketing of viatical based investments to residents of California. Macatawa participated by reviewing TPI's marketing materials, having an officer in Macatawa's trust department appear in a TPI marketing video, and meeting with TPI's sales representatives who sold TPI's products to investors in California. Macatawa knew that the marketing materials

referenced Macatawa's escrow services. (*E.g.*, *Myers* Resp., Ex. B, TPI - Life Settlement Purchases 2.) Macatawa then entered into an escrow agreement with each of the *Myers* plaintiffs, in which Macatawa agreed to provide escrow services as a component of each investor's investment with TPI. Based on the foregoing view on the facts, Macatawa reached out to California through its participation in TPI's marketing activities to create continuing relationships with California residents. *See Air Prods. & Controls*, 2007 WL 2791166, at *4, 2007 U.S. App. LEXIS 22801, at *12-13; *Serras*, 875 F.2d at 1217.

As to its participation in marketing activity, Macatawa contends that the affidavits of Messrs. Block and Hammon do not indicate that Macatawa solicited the California sales representatives to come to Michigan. Macatawa also notes that the *Myers* plaintiffs have not provided an affidavit from any individual plaintiffs indicating that he or she communicated with Macatawa. When viewed in the light most favorable to the *Myers* plaintiffs, the affidavits of Messrs. Block and Hammon indicate that when Macatawa met with sales representatives from California, Macatawa knew that the sales representatives were gathering information to provide to prospective investors in California, in particular, information about Macatawa's role as escrow agent. (Block Aff. ¶ 6; Hammon Aff. ¶¶ 3-5.) The affidavits indicate that upon returning to California the sales representatives conveyed this information to prospective investors. (Block Aff. ¶ 3; Hammon Aff. ¶ 7.) In the context of this motion, the affidavits support an inference that Messrs. Block and Hammon's descriptions of the experiences of individual investors are representative of the *Myers*

plaintiffs' experiences. Aside from the affidavits, the obligations created by the escrow agreements indicate that Macatawa's contacts with the *Myers* plaintiffs were continuous. Although a contract alone is generally insufficient to establish minimum contacts, a contract in conjunction with the "contemplated future consequences" of the contract can establish minimum contacts. *Burger King*, 471 U.S. at 478-79. The escrow agreements were not one-shot transactions between the individual plaintiffs and Macatawa; rather, the escrow agreements created continuing obligations for Macatawa. *See Air Prods. & Controls*, 2007 WL 2791166, at *4, 2007 U.S. App. LEXIS 22801, at *12-13.

"The place where the contractual obligation was incurred is a factor that courts often deem important, although it cannot normally be determinative." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989) (citing *Hanson v. Denckla*, 357 U.S. 235, 251-52 (1958), and *Davis H. Elliott Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1181 (6th Cir.1975)). Macatawa Bank signed the escrow agreements in Michigan. (File No. 1:07-CV-775, Dkt. No. 3, Downs Decl. ¶ 13.) The forum in which Macatawa signed the escrow agreements does not change the foregoing analysis because the activity before and after the signing indicates that Macatawa established and then maintained contacts with California.

Macatawa contends that the facts in the *Myers* lawsuit are materially similar to those in *Phillips Exeter Academy v. Howard Phillips Fund, Inc.,* 196 F.3d 284 (1st Cir. 1999), and that based on the reasoning in that opinion the Court should conclude that there is a lack of

specific personal jurisdiction over Macatawa in California.  Macatawa contends that the Court should apply *Phillips Exeter Academy*'s holding, that: "[T]o make a prima facie showing of purposeful availment, it is not enough to prove that a defendant agreed to act as the trustee of a trust that benefitted a resident of the forum state."  *Id.* at 292.  Contrary to Macatawa's assertion, *Phillips Exeter Academy*'s holding does not suggest a lack of specific personal jurisdiction over Macatawa in California.  In *Phillips Exeter Academy* the plaintiff's claims were not based on a relationship that had been initiated by the defendant; rather, a third-party had left funds to the defendant in his will and a condition in the will required the annual payment of a certain amount to the plaintiff for twenty years.  *Id.* at 286.  Other than the condition in the will, the defendant's only other connection to the forum was a single visit that the chief executive officer of the defendant made to the forum in an attempt to negotiate an agreement with the plaintiff that would extinguish the defendant's obligations to the plaintiff.  *Id.* at 287.  The absence of facts indicating that the defendant had a role in initiating the relationship is made clear by the First Circuit's statement that if the defendant had "actually reached out to the plaintiff's state of residence to *create* a relationship - say by solicitation" then there would have been purposeful availment.  *Id.* at 292.  Thus, there is nothing in the facts of *Phillips Exeter Academy* that is comparable to Macatawa's marketing activities.  In the absence of such facts *Phillips Exeter Academy* is distinguishable.

In the alternative, Macatawa contends that to the extent it participated in TPI's marketing activities, it was participating in a "national" campaign that was not directed at

California. (File No. 1:07-CV-775, Dkt. No. 4, Deardorff Decl. ¶¶ 10-11.) Macatawa, relying on *Insolia v. Philip Morris, Inc.*, 31 F. Supp. 2d 660, 672-73 (W.D. Wis. 1998), contends that a "national" marketing campaign cannot support specific personal jurisdiction. The Court finds *Insolia* to be distinguishable for three reasons. First, the court in *Insolia* was evaluating specific personal jurisdiction based on the defendant's alleged participation in a "national" "conspiracy to spread misinformation about the adverse health effects of smoking," not a "national" marketing campaign. *Id.* at 673. Second, there was no allegation in *Insolia* of meetings similar to those that took place between Macatawa and TPI's California sales representatives. This factual distinction is important because those meetings were one way in which Macatawa purposefully established contacts with California residents and there was no comparable activity in *Insolia*. Third, in *Insolia* the defendant had not entered into contracts with individual residents of the forum. This factual distinction is important because Macatawa created continuing obligations to California residents when it entered into escrow agreements.

Macatawa purposefully availed itself of the privilege of doing business in California.

### b. Arising From

Macatawa's forum contacts can essentially be described in two categories: (1) the marketing activities and (2) the continuing relationships that were created by the escrow agreements. All of the claims asserted by the *Myers* plaintiffs are "related to" or "connected with" at least one category of contacts. Macatawa essentially concedes as much by

acknowledging in its brief that if the purposeful availment requirement is met, then the arising from requirement is met. (File No. 1:07-CV-775, Dkt. No. 7, Macatawa's Br. in Supp. 17-18.) The following claims are related to the marketing activities: fraud and fraudulent inducement, unlawful sale of unqualified securities and securities fraud, and conspiracy. The following claims are related to the continuing relationships: breach of contract and fraudulent concealment, fraud and fraudulent inducement, breach of fiduciary duty, knowing participation in breach of fiduciary duty, unlawful sale of unqualified securities and securities fraud, negligence and gross negligence, and conspiracy. The causes of action alleged by the *Myers* plaintiffs arise from Macatawa's contacts with California.

### c.    Reasonableness

California has an interest in the *Myers* lawsuit because it involves the sale of an investment product to California residents and because at least sixty-three California residents were allegedly harmed by Macatawa's conduct. The *Myers* plaintiffs have an interest in a California forum because of their interest in litigating in their home forum and because the records in their possession that are pertinent to this litigation are in California. If the *Myers* lawsuit goes to trial, Macatawa will incur the burden of traveling California for trial. However, compelling the defendant to travel is insufficient by itself to render specific personal jurisdiction unreasonable. *Intera Corp.*, 428 F.3d at 618. Macatawa contends that a California forum will burden it because many of the relevant documents and witnesses are in Michigan. (File No. 1:07-CV-775, Dkt. No. 2, Riley Decl. ¶ 5.) With respect to the

burden of pretrial matters, the MDL consolidation of the *Adamson*, *Bailey*, *Elkins*, and *Myers* lawsuits in the Western District of Michigan alleviates most, if not all, of the burden on Macatawa.  Macatawa contends that Michigan has a stronger interest in this suit because much of the allegedly wrongful conduct occurred in Michigan.  Although Michigan clearly has a strong interest in this matter, it is not clear that Michigan has a greater interest than California as to California residents.  The acts of Macatawa have a substantial enough connection with California, that in consideration of the foregoing analysis, the exercise of specific personal jurisdiction over Macatawa in California is reasonable.

### 3.  Oklahoma - *Adamson* and *Elkins* Plaintiffs

#### a.  Purposeful Availment

##### i.  *Adamson* Plaintiffs

The *Adamson* plaintiffs contend that the following alleged facts make a prima facie showing that Macatawa purposefully availed itself of the privilege of doing business in Oklahoma.  The *Adamson* plaintiffs allege that Macatawa participated in the marketing of TPI's products, acted as escrow agent, performed bank activities essential to the operation of TPI's products, and acted as co-trustee of the TPI Grand Trust, which was the beneficiary of record for most of the viaticated insurance policies.  (File No. 1:07-CV-750, Dkt. No. 6, *Adamson* Fourth Am. Compl. ¶ 14.)  Macatawa reviewed TPI's marketing materials that described Macatawa's role in TPI's products.  (*Adamson* Resp., Ex. 4, Deardroff Dep. 34:24-35:20.)  An officer in Macatawa's trust department, Richard Deardorff, appeared in a

marketing video produced by TPI.  (*Id.* at 36:3-40:25.)  Individuals who sold TPI's products in Oklahoma traveled to Michigan and met with representatives of TPI and Macatawa. (*Adamson* Resp., Ex. 6, Elkins Aff. ¶¶ 2-3, 5; *Adamson* Resp., Ex. 9, Farquhar Aff. ¶¶ 2-3.) During the meetings the sales representatives were introduced as Oklahoma sales representatives and the attendant circumstances indicated that they would use the information Macatawa provided at these meetings to market TPI's products, including Macatawa's escrow services, to Oklahoma residents.  (Elkins Aff. ¶¶ 3, 5.)  To at least one of the sales representatives, Macatawa appeared to have participated in these meetings with out-of-state sales representatives on more than one occasion.  (Elkins Aff. ¶ 6.)  Macatawa Bank entered into contracts with over 150 residents of Oklahoma.  (*Adamson* Resp., Ex. 2.) Each escrow agreement included the investor's address, thereby alerting Macatawa that it was transacting with Oklahoma residents.  (*E.g.*, *Adamson* Resp., Ex. 2, Adamson Escrow Agreement.)   As part of each of these transactions, Macatawa accepted deposits from Oklahoma residents.  Additionally, Macatawa directly mailed new account forms to Eddie Elkins, a TPI sales representative in Oklahoma.  (Elkins Aff. ¶ 11 & Att. 1.)  Over fifty of the *Adamson* plaintiffs were clients of Mr. Elkins.  (Elkins Aff. ¶ 1.)  Macatawa disputes many of the foregoing allegations and rebuts some of the foregoing with competing affidavits.  Those competing affidavits are without moment as to the motion to dismiss because the motion is being decided without an evidentiary hearing.  *Intera Corp.*, 428 F.3d at 614;  *Theunissen,* 935 F.2d at 1459;  *Serras*, 875 F.2d at 1214;  *see supra* Part III.B.2.a.

The evidence offered by the *Adamson* plaintiffs, when viewed in the light most favorable to the *Adamson* plaintiffs, suggests the following. Macatawa knowingly participated in TPI's marketing of viatical based investments to residents of Oklahoma. Macatawa participated by reviewing TPI's marketing materials, having an officer in Macatawa's trust department appear in a TPI marketing video, meeting with TPI's sales representatives who sold TPI's products to investors in Oklahoma, and sending new account forms to Mr. Elkins. Macatawa knew that the marketing materials referenced Macatawa's escrow services. (*E.g.*, *Adamson* Resp., Ex. 3, TPI - Life Settlement Purchases 2.) Macatawa then entered into an escrow agreement with each of the *Adamson* plaintiffs, in which Macatawa agreed to provide escrow services as a component of each investor's investment with TPI. Based on the foregoing view on the facts, Macatawa reached out to Oklahoma through its participation in TPI's marketing activities to create continuing relationships with Oklahoma residents. *See Air Prods. & Controls*, 2007 WL 2791166, at *4, 2007 U.S. App. LEXIS 22801, at *12-13; *Serras*, 875 F.2d at 1217.

Although Macatawa signed the escrow agreements in Michigan, (File No. 1:07-CV-750, Dkt. No. 1, Macatawa's Br. in Supp., Ex. 2, Downs Decl. ¶ 13), that is insufficient to alter the foregoing analysis given Macatawa's activities before and after signing each of the escrow agreements. Macatawa contends that the marketing activity is insufficient to establish minimum contacts because Macatawa contends that it did not solicit the Oklahoma investors and that any marketing that was done in Oklahoma was done by TPI. When the

affidavits of Messrs. Elkins and Farquhar are read in the light most favorable to the *Adamson* plaintiffs, the affidavits indicate that Macatawa's involvement rose to the level of marketing its component of TPI's products in Oklahoma.

Macatawa again directs the Court to *Insolia* and *Phillips Exeter Academy*. The Court finds *Insolia* and *Phillips Exeter Academy* distinguishable from the *Adamson* lawsuit in the same manner as those two cases were distinguishable from the *Myers* lawsuit. *See supra* Part III.B.2.a. Macatawa contends that the escrow agreements and the ensuing obligations are insufficient to establish purposeful availment and cites *Far West Capital v. Towne*, 46 F.3d 1071 (10th Cir 1995), in support of this contention. In *Far West Capital* the party that *created* the escrow account was attempting to use the situs of the escrow account as evidence of purposeful availment. *Id.* at 1075-76. This would be equivalent to Macatawa contending that the *Adamson* plaintiffs are subject to specific personal jurisdiction in Michigan because the situs of the escrow accounts was in Michigan. On this basis *Far West Capital* is clearly distinguishable. *Cf. Serras*, 875 F.2d at 1215, 1218 (holding that the due process requirements of jurisdiction in Michigan had been met for a dispute involving property in Tennessee).

Macatawa purposefully availed itself of the privilege of doing business in Oklahoma.

### ii. *Elkins* Plaintiffs

The *Elkins* plaintiffs contend that the following alleged facts make a prima facie

showing that Macatawa[9] purposefully availed itself of the privilege of doing business in Oklahoma. The *Elkins* plaintiffs allege that Macatawa participated in the marketing of TPI's products, acted as escrow agent, performed bank activities essential to the operation of TPI's products, and acted as co-trustee of the TPI Grand Trust, which was the beneficiary of record for most of the viaticated insurance policies. (File No. 1:07-CV-751, Dkt. No.1, *Elkins* Compl. ¶ 13.) Macatawa reviewed TPI's marketing materials that described Macatawa's role in TPI's products. (*Elkins* Resp., Ex. 4, Deardroff Dep. 34:24-35:20.) An officer in Macatawa's trust department, Richard Deardorff, appeared in a marketing video produced by TPI. (*Id.* at 36:3-40:25.) Eddie Elkins, who appears to have been involved in the transactions of all of the *Elkins* plaintiffs, traveled to Grand Rapids and met with representatives of TPI and Macatawa. (*Elkins* Compl. ¶ 3; *Elkins* Resp., Ex. 2, at 3, 9; *Elkins* Resp., Ex. 5, Elkins Aff. ¶¶ 2-3, 5.) During the meeting Mr. Elkins was introduced as an Oklahoma sales representative and the attendant circumstances indicated that he would use the information Macatawa provided at these meetings to market TPI's products, including Macatawa's escrow services, to investors in Oklahoma. (Elkins Aff. ¶¶ 3, 5.) Each escrow agreement included the investor's address, thereby alerting Macatawa that it was transacting with Oklahoma residents. (*E.g.*, *Elkins* Resp., Ex. 2, Kristy Elkins Escrow Agreement.) As part of each of these transactions, Macatawa accepted deposits from Oklahoma residents. Macatawa disputes many of the foregoing allegations and rebuts some

---

[9]The only defendant in the *Elkins* lawsuit is Macatawa Bank Corporation.

of the foregoing with competing affidavits. Those competing affidavits are without moment as to the motion to dismiss because the motion is being decided without an evidentiary hearing. *Intera Corp.*, 428 F.3d at 614; *Theunissen,* 935 F.2d at 1459; *Serras*, 875 F.2d at 1214; *see supra* Part III.B.2.a.

The evidence offered by the *Elkins* plaintiffs, when viewed in the light most favorable to the *Elkins* plaintiffs, suggests the following. Macatawa knowingly participated in TPI's marketing of viatical based investments to residents of Oklahoma. Macatawa participated by reviewing TPI's marketing materials, having an officer in Macatawa's trust department appear in a TPI marketing video, and meeting with the TPI's sales representative who sold TPI's products to the *Elkins* plaintiffs. Macatawa knew that the marketing materials referenced Macatawa's escrow services. (*E.g.*, *Elkins* Resp., Ex. 3, TPI - Life Settlement Purchases 2.) Macatawa then entered into an escrow agreement with each of the *Elkins* plaintiffs, in which Macatawa agreed to provide escrow services as a component of each investor's investment with TPI. Based on the foregoing view on the facts, Macatawa reached out to Oklahoma through its participation in TPI's marketing activities to create continuing relationships with Oklahoma residents. *See Air Prods. & Controls*, 2007 WL 2791166, at *4, 2007 U.S. App. LEXIS 22801, at *12-13; *Serras*, 875 F.2d at 1217. Although Macatawa signed the escrow agreements in Michigan, (File No. 1:07-CV-751, Dkt. No. 1, Macatawa's Br. in Supp., Ex. 3, Deardorff Decl. ¶ 7), that is insufficient to alter the foregoing analysis given Macatawa's activities before and after signing each of the escrow agreements.

Macatawa contends that Mr. Elkins initiated the meeting with Macatawa and on that basis the Court should not consider that meeting to create a contact with Oklahoma. (Macatawa's Br. in Supp., Ex. 6, Elkins Trial Tr. 67:8-22.)  Mr. Elkins could have sold viatical based investments through TPI without visiting TPI or Macatawa in Michigan, but those are not the facts of the *Elkins* lawsuit.  Mr. Elkins did visit Macatawa and based in part on the information he received from Macatawa, Mr. Elkins decided that he would sell TPI's products, which included escrow services provided by Macatawa.  (*Id.*; Elkins Aff. ¶ 7.) When read in the light most favorable to the *Elkins* plaintiffs, Mr. Elkins affidavit indicates that a regular part of Macatawa's relationship with TPI involved meeting with sales representatives and explaining Macatawa's escrow and other services.  (Elkins Aff. ¶ 6.)  In this context Mr. Elkins' visit with Macatawa was not unsolicited; rather, Macatawa participated in TPI's marketing in Oklahoma and in furtherance of that marketing Macatawa met with Mr. Elkins.  Mr. Elkins' meeting with Macatawa indicates that Macatawa expected a given level of business in Oklahoma year after year.  *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002).  Macatawa again directs the Court to *Insolia* and *Phillips Exeter Academy*.  The Court finds *Insolia* and *Phillips Exeter Academy* distinguishable from the *Elkins* lawsuit in the same manner as those two cases were distinguishable from the *Myers* lawsuit. *See supra* Part III.B.2.a.  Macatawa also directs the Court to *Far West Capital*, the Court finds *Far West Capital* distinguishable from the *Elkins* lawsuit for the same reason it was distinguishable from the *Adamson* lawsuit.  *See supra* Part II.B.3.a.i.

Macatawa purposefully availed itself of the privilege of doing business in Oklahoma.

**b.      Arising From**

Macatawa's forum contacts can essentially be described in two categories: (1) the marketing activities and (2) the continuing relationships that were created by the escrow agreements.  All of the claims asserted by the *Adamson* and *Elkins* plaintiffs are "related to" or "connected with" at least one category of contacts.  The following claims of the *Adamson* plaintiffs are related to the marketing activities: fraud and fraudulent inducement, securities fraud, and conspiracy.  The following claims of the *Elkins* plaintiffs are related to the marketing activities: fraud and fraudulent inducement, securities fraud, and conspiracy.  The following claims of the *Adamson* plaintiffs are related to the continuing relationships: breach of contract and fraudulent concealment, fraud and fraudulent inducement, breach of fiduciary duty, knowing participation in breach of fiduciary duty, negligence and gross negligence, and conspiracy.  The following claims of the *Elkins* plaintiffs are related to the continuing relationships: breach of contract and fraudulent concealment, fraud and fraudulent inducement, breach of fiduciary duty, knowing participation in breach of fiduciary duty, negligence and gross negligence, and conspiracy. The causes of action alleged by the *Adamson* and *Elkins* plaintiffs arise from Macatawa's contacts with Oklahoma.

**c.      Reasonableness**

Oklahoma has an interest in the *Adamson* and *Elkins* lawsuits because it involves the

sale of an investment product to Oklahoma residents and because at least 250 Oklahoma residents were allegedly harmed by Macatawa's conduct. The *Adamson* and *Elkins* plaintiffs have an interest in an Oklahoma forum because of their interest in litigating in their home forum and because the records in their possession that are pertinent to this litigation are in Oklahoma. If the *Adamson* and *Elkins* lawsuits go to trial, Macatawa will incur the burden of traveling to Oklahoma for trial. However, compelling the defendant to travel is insufficient by itself to render specific personal jurisdiction unreasonable. *Intera Corp.*, 428 F.3d at 618. Macatawa contends that an Oklahoma forum will burden it because many of the relevant documents and witnesses are in Michigan. (File No. 1:07-CV-750, Dkt. No. 1, Macatawa's Mot., Ex. 1, Riley Decl. ¶ 5; File No. 1:07-CV-751, Dkt. No. 4, Macatawa's Mot., Ex. 1, Riley Decl. ¶ 5.) With respect to the burden of pretrial matters, the MDL consolidation of the *Adamson*, *Bailey*, *Elkins*, and *Myers* lawsuits in the Western District of Michigan alleviates most, if not all, of the burden on Macatawa. Moreover, Macatawa proposed the Western District of Oklahoma as an alternative forum for MDL consolidation, which suggests that litigating in Oklahoma would not pose that great of a burden on Macatawa. (*Adamson* Resp., Ex. 10, Macatawa's MDL Mot. 12; *Elkins* Resp., Ex. 8, Macatawa's MDL Mot. 12.) The acts of Macatawa have a substantial enough connection with Oklahoma, that in consideration of the foregoing analysis, the exercise of specific personal jurisdiction over Macatawa in Oklahoma is reasonable.

### 4.    Texas - *Bailey* Plaintiffs

#### a.    Purposeful Availment

The *Bailey* plaintiffs contend that the following alleged facts make a prima facie showing that Macatawa purposefully availed itself of the privilege of doing business in Texas. The *Bailey* plaintiffs allege that Macatawa participated in the marketing of TPI's products, acted as escrow agent, performed bank activities essential to the operation of TPI's products, and acted as co-trustee of the TPI Grand Trust, which was the beneficiary of record for most of the viaticated insurance policies. (File No. 1:07-CV-738, Dkt. No. 52, *Bailey* Third Am. Compl. ¶ 14.) Macatawa reviewed TPI's marketing materials that described Macatawa's role in TPI's products. (*Bailey* Resp., Ex. 4, Deardroff Dep. 34:24-35:20.) An officer in Macatawa's trust department, Richard Deardorff, appeared in a marketing video produced by TPI. (*Id.* at 36:3-40:25.) Macatawa Bank entered into escrow agreements with over eighty residents of Texas. (*Bailey* Resp., Ex. 1.) Each escrow agreement included the investor's address, thereby alerting Macatawa that it was transacting with Texas residents. (*E.g.*, *Bailey* Resp., Ex. 1, Musick Escrow Agreement.) As part of each of these transactions, Macatawa accepted deposits from Texas residents. Macatawa disputes many of the foregoing allegations and rebuts some of the foregoing with competing affidavits. Those competing affidavits are without moment as to the motion to dismiss because the motion is being decided without an evidentiary hearing. *Intera Corp.*, 428 F.3d at 614; *Theunissen,* 935 F.2d at 1459; *Serras*, 875 F.2d at 1214; *see supra* Part III.B.2.a.

The evidence offered by the *Bailey* plaintiffs, when viewed in the light most favorable to the *Bailey* plaintiffs, suggests the following. Macatawa knowingly participated in TPI's marketing of viatical based investments to residents of Texas. Macatawa participated by reviewing TPI's marketing materials and having an officer in Macatawa's trust department appear in a TPI marketing video. Macatawa knew that the marketing materials referenced Macatawa's escrow services. (*E.g.*, *Bailey* Resp., Ex. 3, TPI - Life Settlement Purchases 2.) Macatawa then entered into an escrow agreement with each of the *Bailey* plaintiffs, in which Macatawa agreed to provide escrow services as a component of each investor's investment with TPI.

"[A] single act by [the] defendant directed toward [Texas] that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (citing *Calder*, 465 U.S. 783). After entering into the escrow agreements, Macatawa had continuing relationships with each of the *Bailey* plaintiffs. All of the claims asserted by *Bailey* plaintiffs include some alleged inadequacy on the part of Macatawa in the performance of those relationships. (*Bailey* Third Am. Compl. ¶¶ 34-35, 37-41, 43, 44, 46, 48-49.) The communications made with residents of Texas as part of the relationships established by the escrow agreements form the basis for the *Bailey* plaintiffs' claims, which represents a type of purposeful availment by Macatawa. *Neal*, 270 F.3d at 332 ("When the actual content of the communications into the forum gives rise to an intentional tort action,

that alone may constitute purposeful availment."). Macatawa's actions were purposely directed at Texas based on Macatawa's knowledge of the *Bailey* plaintiffs' residency and "were not merely incidental communications" Macatawa sent into Texas. *Id.*

Macatawa again directs the Court to *Insolia* and *Phillips Exeter Academy*. The Court finds *Phillips Exeter Academy* distinguishable from the *Bailey* lawsuit in the same manner as the Court found *Phillips Exeter Academy* distinguishable from the *Myers* lawsuit. *See supra* Part III.B.2.a. The Court finds *Insolia* distinguishable from the *Bailey* lawsuit for the first and third reason that the Court found *Insolia* distinguishable from the *Myers* lawsuit. *See id.*

Macatawa purposefully availed itself of the privilege of doing business in Texas.

### b. Arising From

Macatawa's forum contacts can essentially be described in two categories: (1) the marketing activities and (2) purposefully directed communications related to the escrow agreements. All of the claims asserted by the *Bailey* plaintiffs are "related to" or "connected with" at least one category of contacts. The following claims of the *Bailey* plaintiffs are related to the marketing activities: fraud and fraudulent inducement, sale of unregistered securities, and conspiracy. The following claims of the *Bailey* plaintiffs are related to the purposefully directed communications: breach of contract and fraudulent concealment, fraud and fraudulent inducement, breach of fiduciary duty, knowing participation in breach of fiduciary duty, negligence and gross negligence, and conspiracy. The causes of action alleged by the *Bailey* plaintiffs arise from Macatawa's contacts with Texas.

### c.    Reasonableness

Texas has an interest in *Bailey* lawsuit because it involves the sale of an investment product to Texas residents and because at least eighty Texas residents were allegedly harmed by Macatawa's conduct.  The *Bailey* plaintiffs have an interest in a Texas forum because of their interest in litigating in their home forum and because the records in their possession that are pertinent to this litigation are in Texas.  If the *Bailey* lawsuit goes to trial, Macatawa will incur the burden of traveling Texas for trial.  However, compelling the defendant to travel is insufficient by itself to render specific personal jurisdiction unreasonable.  *Intera Corp.*, 428 F.3d at 618.  Macatawa contends that a Texas forum will burden it because many of the relevant documents and witnesses are in Michigan.  (File No. 1:07-CV-738, Dkt. No. 16, Macatawa's Mot. App., Ex. 1, Riley Decl. ¶ 5.)  With respect to the burden of pretrial matters, the MDL consolidation of the *Adamson*, *Bailey*, *Elkins*, and *Myers* lawsuits in the Western District of Michigan alleviates most, if not all, of the burden on Macatawa.  The acts of Macatawa have a substantial enough connection with Texas, that in consideration of the foregoing analysis, the exercise of specific personal jurisdiction over Macatawa in Texas is reasonable.

### IV.

The *Adamson*, *Bailey*, *Elkins*, and *Myers* plaintiffs have all made a prima facie showing that the exercise of specific personal jurisdiction over Macatawa by courts in their respective states comports with due process.  As the requirements of the jurisdictional statutes in each of the three states is coextensive with the due process requirements, the

jurisdictional statutes are all satisfied. Therefore, the exercise of specific personal jurisdiction over Macatawa in the *Adamson*, *Bailey*, *Elkins*, and *Myers* lawsuits meets both the statutory and the due process requirements. As both of these requirements are met, Macatawa's motions to dismiss are denied. An order will be entered consistent with this opinion.

Date:    November 6, 2007          /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   CHIEF UNITED STATES DISTRICT JUDGE