UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


In re TRADE PARTNERS, INC.,
INVESTORS LITIGATION,

MDL Docket No. 1846

File No.  1:03-CV-321

HON. ROBERT HOLMES BELL

_____/

# **O P I N I O N**

This matter is before the Court on several motions to dismiss that have been filed by

Defendants Macatawa Bank Corporation and Richard Deardorff, Counter-Defendants David

E. Polosky and Matthew J. Fox, and Third-Party Defendants Jeff Barrett and Sherry Tedaldi

in *Forrest W. Jenkins, et al. v. Macatawa Bank Corp., et al.*, File No. 1:03-CV-321.[1]  These

motions seek dismissal based on a lack of personal jurisdiction, various aspects of the

Michigan Uniform Securities Act ("MUSA"), a failure to plead with the particularity

required by Federal Rule of Civil Procedure 9(b), and a failure to state a claim of unjust

enrichment.  For the reasons that follow, all of the motions will be denied.

## **I.  Background**

This suit arises from the sale of viatical based investments by Trade Partners Inc.

("TPI") between 1996 and 2003.  Defendant Macatawa Bank Corporation is the successor

by merger to Grand Bank Financial Corporation.  Macatawa Bank is the successor by

---

[1]Unless indicated otherwise, all docket numbers referenced in this opinion are to the
docket in *Forrest W. Jenkins, et al. v. Macatawa Bank Corp., et al.*, File No. 1:03-CV-321.

merger to Grand Bank. Macatawa Bank is a wholly-owned subsidiary of Macatawa Bank Corporation. Grand Bank provided escrow services for funds involved in viatical based investments made with TPI. The Court will collectively refer to Macatawa Bank Corporation and Macatawa Bank as Macatawa.[2]

On November 8, 2006, the Court denied class certification in this case. On June 26, 2007, the Judicial Panel on Multidistrict Litigation ("JPML") transferred four cases involving individuals who had invested with TPI then pending outside of the Western District of Michigan to be consolidated with *Jenkins v. Macatawa Bank Corp.* The motions addressed in this opinion were filed prior to the JPML consolidation order.

Plaintiffs[3] allege five causes against Deardorff and Macatawa, but only Plaintiffs' cause of action under the MUSA is relevant for purposes of these motions. (Dkt. No. 916, Second Am. Consolidated Compl. ¶¶ 70, 71.) Plaintiffs allege Macatawa was a seller, or a person who directly or indirectly controlled a seller, of unregistered securities in violation of section 301 of the MUSA, M.C.L.S. § 451.701 (LexisNexis 1999); M.C.L.S. § 451.701

---

[2]Consistent with the Court's practice in earlier opinions in this case, the Court refers to Grand Bank as Macatawa. (*E.g.*, File No. 1:07-MD-1846, Dkt. No. 25, 11/06/2007 Op. 2 n.2.)

[3]Plaintiffs in *Jenkins v. Macatawa Bank Corp.* are Gerald B. Bostian, Matthew J. Fox, Forrest W. Jenkins, David E. Polosky, Kelly W. Priest, Kristine R. Stocking, Gary L. Towle M.D. Profit Sharing Plan Trust, Gary L. and Mary J. Towle Family Revocable Trust, and Russell S. Vail.

(LexisNexis 2001).[4]  Plaintiffs allege Deardorff was an agent who materially aided in the sale of unregistered securities in violation of section 301 of the MUSA.  Deardorff and Macatawa each filed counterclaims against Fox and Polosky and third-party complaints against Tedaldi and Barrett.  (Dkt. No. 202, Macatawa's First Am. Third-Party Compl.; Dkt. No. 203, Deardorff's First Am. Third-Party Compl.; Dkt. No. 944, Macatawa's First Am. Countercl.; Dkt. No. 946, Deardorff's First Am. Countercl.)  Deardorff and Macatawa's third-party complaints against Tedaldi and Barrett contain three counts, which are (1) fraud, (2) contribution under the MUSA for materially aiding in the sale of unregistered securities, and (3) unjust enrichment.  (Deardorff's First Am. Third-Party Compl. ¶¶ 346-58; Macatawa's First Am. Third-Party Compl. ¶¶ 346-58.)  Deardorff and Macatawa's counterclaim against Fox and Polosky contains two counts, which are (1) contribution under the MUSA for materially aiding in the sale of unregistered securities, and (2) unjust enrichment.  (Deardorff's First Am. Countercl. ¶¶ 48-54; Macatawa's First Am. Countercl. ¶¶ 48-54.)

Although Barrett, Fox, Polosky, and Tedaldi filed their motions to dismiss against

_____

[4]In 2000 the Michigan legislature amended all of the sections of the MUSA referenced in this opinion.  An act to enact the uniform securities act relating to the issuance, offer, sale, or purchase of securities, 2000 Mich. Pub. Acts 494.  (*See also* Dkt. No. 679, 11/09/2006 Am. Op. 26 n.5 (discussing the effect of the change)).  The 2000 amendments to the MUSA took effect January 11, 2001.  TPI operated from 1996 to 2003, so some of the transactions are governed by the unamended version of the MUSA and some are governed by the amended version of the MUSA.  None of the parties to the motions addressed in this opinion have raised any issues with respect to these changes, so for simplicity in the remainder of this opinion the Court will only cite to the current version of the MUSA.

Deardoff and Macatawa, Deardorff and Macatawa join in Barrett, Fox, Polosky, and Tedaldi's motions with respect to the MUSA. Deardorff and Macatawa do not concede to the dismissal of their MUSA claims. Rather, to the extent that Barrett, Fox, Polosky, and Tedaldi prevail on any basis on which they seek dismissal of the MUSA claims asserted against them, Deardorff and Macatawa move for the dismissal of Plaintiffs' MUSA claim on the same basis. (Dkt. No. 834, Deardoff's Br. in Opp'n 7-8; Dkt. No. 836, Macatawa's Br. in Opp'n 6-7.)

## II. Personal Jurisdiction

Barrett moves to dismiss Deardorff and Macatawa's third-party complaints against him pursuant Rule 12(b)(2) based on the Court lacking personal jurisdiction over him.[5] Barrett is a resident of Houston, Texas. Barrett was an associate or outside sales person for TPI. (Dkt. No.798, Barrett's Ans. to Macatawa's First Am. Third-Party Compl. ¶ 306.) Barrett sold TPI's viatical settlements and he received sales commissions from TPI. (*Id.* at ¶¶ 306, 311.)

"In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000), and *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)). *See also*

_____

[5]Fox, Polosky, and Tedaldi do not contest the Court's personal jurisdiction. Additionally, on November 6, 2007, the Court determined that transferor courts in the cases transferred from California, Oklahoma, and Texas have specific personal jurisdiction over Macatawa. (File No. 1:07-MD-1846, 11/06/2007 Op.)

Fed. R. Civ. P. 4(e)(1), (k)(1)(A). A federal court must analyze jurisdiction in a two-step process. First, the court must determine if state law, here Michigan law, grants the court authority to exercise personal jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). Second, the court must determine if the exercise of personal jurisdiction over the defendant satisfies the Fourteenth Amendment's Due Process Clause. *Id.* The party asserting that the court has jurisdiction "bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant." *Intera Corp.*, 428 F.3d at 615 (citing *Calphalon Corp.*, 228 F.3d at 721, and *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The Court has determined that this motion to dismiss for lack of personal jurisdiction can be decided based upon the written submissions, without an evidentiary hearing. Therefore, the Court "'must consider the pleadings and affidavits in the light most favorable'" to the third-party plaintiffs. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). If the party asserting that the court has jurisdiction meets the burden of making a prima facie showing that personal jurisdiction exists, then the motion to dismiss should be denied, "'notwithstanding any controverting presentation by the moving party.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

## A.    Statutory Jurisdiction Under Michigan Law

Deardorff and Macatawa contend that the Court has personal jurisdiction based on

the forum-selection clause in the associate agreement between Barrett and TPI. Michigan law "permits parties to contractually agree, in advance, to personal jurisdiction . . . ." *Omne Fin., Inc. v. Shacks, Inc.*, 460 Mich. 305, 312, 596 N.W.2d 591 (1999). *See also* M.C.L.S. § 600.701(3) (LexisNexis 2008). Michigan Compiled Laws § 600.745(2) provides that

> If the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if all the following occur:
>> (a) The court has power under the law of this state to entertain the action.
>> (b) This state is a reasonably convenient place for the trial of the action.
>> (c) The agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.
>> (d) The defendant is served with process as provided by court rules.

M.C.L.S. § 600.745(2) (LexisNexis 2008). Before analyzing personal jurisdiction under § 600.745(2) the Court must first determine that the Court does not have another basis for personal jurisdiction over Barrett. M.C.L.S. § 600.745(2); *McNic Oil & Gas Co. v. Ibex Resources Co.*, 23 F. Supp. 2d 729, 735 n.7 (E.D. Mich. 1998). Deardorff and Macatawa do not contend that the Court has limited personal jurisdiction over Barrett, M.C.L.S. § 600.705, general jurisdiction over Barrett based on service of process in Michigan, M.C.L.S. § 600.701(1), or general jurisdiction over Barrett based on Barrett being domiciled in Michigan, M.C.L.S. § 600.702(2). As Deardorff and Macatawa did not assert these as bases for the Court's personal jurisdiction over Barrett, they are deemed to be waived.

The associate agreement between TPI and Barrett includes a forum-selection clause that provides that

> This agreement shall be governed by and construed according to the laws of the State of Michigan and venue shall be in the state and federal courts in Kent County, Michigan.

(Macatawa's Br. in Opp'n, Ex. D, Assoc. Agreement.)[6]  As Barrett did not file a reply to Macatawa's response, Barrett has not made any contention that the actions brought by Deardorff and Macatawa are outside the scope of the forum-selection clause because they are not parties to the associate agreement.

Under Michigan Compiled Laws § 600.745(2) there are four other requirements for personal jurisdiction based on the existence of a written agreement.  First, the court must have the power to entertain this action.  M.C.L.S. § 600.745(2)(a).  The Court has the power to entertain Deardorff and Macatawa's action against Barrett under the Court's ancillary jurisdiction.  28 U.S.C. § 1367(b).  Second, the court must be a reasonably convenient place for trial.  M.C.L.S. § 600.745(2)(b).  Macatawa is and TPI was based in Grand Rapids, Michigan.  Additionally, many of the relevant witnesses and documents are in Michigan.  The Court would be a reasonably convenient place for trial.  *See Lease Acceptance Corp. v. Adams*, 272 Mich. App. 209, 225-27, 724 N.W.2d 724 (2006) (setting forth the factors to be considered in determining if a court is "reasonably convenient").  Third, the written agreement to personal jurisdiction must not have been obtained by duress, misrepresentation, the abuse of economic power, or other unconscionable means.  M.C.L.S. § 600.745(2)(c).

---

[6]Macatawa has not provided the associate agreement between TPI and Barrett; rather, Macatawa provided the associate agreement between TPI and Eddie Elkins.  However, Barrett did not file a reply to Macatawa's response, so Barrett has not contended that he did not sign an associate agreement or that the associate agreement that he signed contained materially different terms.

Barrett has not made not any allegation that he signed the associate agreement based on duress, misrepresentation, the abuse of economic power, or other unconscionable means. Fourth, the defendant must have been served with process as provided by court rules. M.C.L.S. § 600.745(2)(d). Deardorff and Macatawa both properly served Barrett. (Dkt. No. 519, Macatawa's Return of Serv. re Barrett; Dkt. No. 680, Deardorff's Return of Serv. re Barrett.) All of the requirements for the exercise of personal jurisdiction pursuant to a written agreement, set forth in Michigan Compiled Laws § 600.745(2)(a-d), are satisfied.

Deardorff and Macatawa have made a prima facie showing that Barrett agreed in writing to submit to personal jurisdiction in Michigan that is sufficient to confer personal jurisdiction under Michigan Compiled Laws § 600.745(2).

**B. Due Process Requirements**

In order to subject a nonresident defendant to personal jurisdiction "'due process requires only that . . . he have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). However, personal jurisdiction is a waivable right. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985).

"[F]orum-selection clauses, although not 'historically . . . favored,' are 'prima facie valid.'" *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 589 (1991) (omission in *Carnival Cruise Lines*) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-10 (1972)). *See also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541

(6th Cir. 2007) ("When interpreting contracts in a diversity action, we generally enforce the parties' contractual choice of forum and governing law.").  A freely-negotiated forum-selection provision that is not unreasonable or unjust "does not offend due process." *Burger King Corp.*, 471 U.S. at 473 n.14.  As the Court previously noted, Barrett has not contended that the associate agreement was not freely negotiated. As to reasonableness, designating Michigan as a forum was reasonable given that TPI's viatical settlements were sold throughout the United States.  In this context the forum-selection clause has the salutary effect of minimizing confusion about where these suits should be brought.  *See Carnival Cruise Lines*, 499 U.S. at 593-94 (analyzing the reasonableness of a forum-selection clause). Lastly, Barrett has not identified any basis that would make litigating in Michigan unjust or fundamentally unfair.

Deardorff and Macatawa have made a prima facie showing that the Court's exercise of personal jurisdiction over Barrett comports with Michigan law and due process.

### III.  Failure to State a Claim Upon Which Relief Can Be Granted

Rule 12(b)(6) enables the court to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v. Gibson*, 355 U.S. 41, 47 (1957)."  *Bell Atl. Corp. v. Twombly*, -- U.S.--,   127 S. Ct. 1955, 1964 (2007) (omission in *Twombly*).  "'[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief.'" *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). The court must construe the counterclaims and the third-party complaint in the light most favorable to the non-moving party, accept all well-pleaded allegations as true, and draw all reasonable inferences in favor of the non-moving party. *Id.*; *Amini v. Oberlin Coll.*, 259 F.3d 493, 497 (6th Cir. 2001). In considering a Rule 12(b)(6) motion a court is generally limited to the counterclaims, the third-party complaint, and the exhibits attached thereto. *Amini*, 259 F.3d at 502.

## A.    MUSA - Territorial Scope

Barrett and Polosky contend Deardorff and Macatawa have failed to state a claim under the MUSA because Barrett is a resident of Texas and Polosky is a resident of Arizona. Barrett and Polosky contend that the MUSA is inapplicable to them because they were not in Michigan while they served as associates for TPI. Deardorff and Macatawa join in this motion with respect to Plaintiffs' MUSA claims.

Section 414 of the MUSA limits the territorial scope of the MUSA. M.C.L.S. § 451.814 (LexisNexis 2008). Section 414(a) makes section 301 applicable to persons who sell in Michigan, make an offer to sell in Michigan, or make an offer to buy in Michigan that is accepted in Michigan. M.C.L.S. § 451.814(a). Section 414(c) provides that an offer to sell or to buy is made in Michigan when the offer originates from Michigan, or is directed by the offeror to Michigan and received at the place to which it is directed or at any post office in Michigan in the case of a mailed offer. M.C.L.S. § 451.814(c). Section 414(c)

further provides that if one of the two foregoing definitions of offer to buy or to sell is satisfied then the offer to buy or to sell is made in Michigan even if neither party is present in Michigan when the offer to buy or to sell is made. *Id.* Section 410(b) provides that "every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the person sustains the burden of proof that he or she did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." M.C.L.S. § 451.810(b) (LexisNexis 2008). Section 410(b) does not limit from where a person may provide material aid for purposes of the MUSA.

TPI was a Michigan corporation and it operated from Michigan. Deardorff and Macatawa allege that the viatical settlements were sold by TPI. (Deardorff's First Am. Countercl. ¶¶ 12, 15; Macatawa's First Am. Countercl. ¶¶ 12, 15; Deardorff's First Am. Third-Party Compl. ¶¶ 353-55; Macatawa's First Am. Third-Party Compl. ¶¶ 353-55.) Deardorff and Macatawa further allege that Barrett and Polosky are liable as agents of TPI who materially aided in the sale of the viatical settlements. (Deardorff's First Am. Countercl. ¶ 51; Macatawa's First Am. Countercl. ¶ 51; Deardorff's First Am. Third-Party Compl. ¶ 355; Macatawa's First Am. Third-Party Compl. ¶ 355.) Deardorff and Macatawa allege that TPI sold viatical settlements in violation of the MUSA and that Barrett materially aided in those sales. The application of the MUSA to Barrett and Polosky depends on who was the seller, where the offer to sell was made from, and/or where the offer was received.

Barrett and Polosky direct the Court to *Wilcox v. Incandela (Wilcox II)*, No. 91 C 5730, 1993 U.S. Dist. LEXIS 15095, 1993 WL 436376 (N.D. Ill. Oct. 26, 1993), in which the district court concluded that the plaintiff failed to state a claim under the MUSA with respect to defendants who were Michigan residents because the sales were made from Illinois. 1993 U.S. Dist. LEXIS 15095, at *17-18, 1993 WL 436376, at *5. However, the court in *Wilcox II* reached this conclusion based on a prior opinion in the case which, in addressing whether the common-law of Illinois or Michigan should apply, had concluded that the seller was an Illinois resident and the offers to sell originated from Illinois. *Id.*; *Wilcox v. Incandela (Wilcox I)*, No. 91 C 5730, 1992 U.S. Dist. LEXIS 7669, at *13-14, 1992 WL 137165, at *4 (N.D. Ill. June 1, 1992) (determining that the seller of the securities was an Illinois resident and the offer originated from Illinois). *Wilcox II* is distinguishable because in the instant case Deardorff and Macatawa allege that TPI was the seller. Deardorff and Macatawa allege that liability extends to Barrett and Polosky based on their having provided material aid to TPI.

When the third-party complaints are read in the light most favorable to Deardorff and Macatawa, and reasonable inferences are drawn in favor of Deardorff and Macatawa, Deardorff and Macatawa could prove a set of facts that would entitle them to relief on their MUSA claim against Barrett and Polosky even if Barrett and Polosky were not in Michigan when they served as associates or outside salespersons for TPI.

**B.      MUSA - Viatical Settlements as Securities Prior to January 10, 2003**

On January 10, 2003, the Michigan Court of Appeals held that the "MUSA's use of the term 'security' includes viatical settlements." *Michelson v. Voison*, 254 Mich. App. 691, 697, 658 N.W.2d 188 (2003). Barrett, Fox, Polosky, and Tedaldi contend that prior to January 10, 2003, viatical settlements were not securities under the MUSA and so the MUSA is inapplicable to the viatical settlements that were sold prior to January 10, 2003. Deardorff and Macatawa did not take a position on this specific issue; however, they do contend that the Court's resolution of this question should apply equally to Plaintiffs' MUSA claims. (Deardoff's Br. in Opp'n 8; Macatawa's Br. in Opp'n 6-7.) Plaintiffs[7] did file a response contending that viatical settlements were securities under the MUSA prior to January 10, 2003. (Dkt. No. 833, Plaintiffs' Resp. to Third-Parties' Mot. to Dismiss.) Barrett, Fox, Polosky, and Tedaldi further contend that as to any viatical settlements sold prior to January 10, 2003, the party asserting a MUSA claim for such a viatical settlement would fail to state a claim upon which relief can be granted.

Under Michigan law, judicial decisions generally "are retroactive unless 'exigent circumstances' justify the 'extreme measure' of prospective-only application." *Trentadue v. Gorton*, 479 Mich. 378, 400, 738 N.W.2d 664 (2007) (citing *Devillers v. Auto Club Ins. Ass'n,* 473 Mich. 562, 586, 702 N.W.2d 539 (2005)). "Complete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law."

---

[7]All of the plaintiffs in the *Jenkins* case joined in this response, except for Fox and Polosky. (Plaintiffs' Resp. to Third-Parties' Mot. to Dismiss 2.)

*Hyde v. Univ. of Mich. Bd. of Regents*, 426 Mich. 223, 240, 393 N.W.2d 847 (1986) (citing

*Tebo v. Havlik*, 418 Mich. 350, 361-63, 343 N.W.2d 181 (1984)).  *Accord Devillers*, 473

Mich. at 587;  *County of Wayne v. Hathcock*, 471 Mich. 445, 485 n.98, 684 N.W.2d 787

(2004).  "Even when a decision meets the threshold criterion for prospective application

because it clearly establishes a new principle of law, [a court] must consider: '(1) the

purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the

effect of retroactivity on the administration of justice.'"  *Trentadue*, 479 Mich. at 400-01

(quoting *Pohutski v. City of Allen Park*, 465 Mich. 675, 696, 641 N.W.2d 219 (2002)).

The court in *Michelson* did not limit its holding that viatical settlements are securities

under the MUSA to having only prospective application.[8]  Barrett, Fox, Polosky, and

Tedaldi contend, however, that *Michelson* should only have prospective application because

of the D.C. Circuit's decision in *SEC v. Life Partners, Inc.*, 87 F.3d 536 (D.C. Cir. 1996).

In *Life Partners* the D.C. Circuit held that viatical settlements are not securities under the

federal Securities Act of 1933.  87 F.3d at 549.  Barrett, Deardorff, Fox, Macatawa, Polosky,

and Tedaldi have not identified any Michigan cases in which a federal court decision

interpreting a federal statute related to the Michigan statute at issue was sufficient to

"constitute clear and uncontradicted case law."  *Hyde*, 426 Mich. at 240 (citing *Tebo*, 418

Mich. at 361-63).  Moreover, in *Michelson* the Michigan Court of Appeals in beginning its

---

[8]Although the court in *Michelson* did not explicitly address the issue of retroactive applicability, the court did apply its holding retroactively in the matter that was before the court.  *Michelson*, 254 Mich. App. at 697.

analysis of whether viatical settlements are securities under the MUSA stated "we have been unable to discover any statutory law or case law specifically indicating whether viatical settlements are included in the MUSA's definition of a 'security.'" *Michelson*, 254 Mich. App. at 695. The *Michelson* court considered the D.C. Circuit's decision in *Life Partners*, the Court of Appeals of Arizona's decision that viatical settlements are securities under the Arizona Securities Act, *Siporin v. Carrington*, 23 P.3d 92, 99 (Ariz. Ct. App. 2001), and the securities acts of several states that explicitly define securities to include viatical settlements. *Michelson*, 254 Mich. App. at 695-96. Lastly, the *Michelson* court considered the 2002 opinion issued by the Michigan Department of Commerce, Corporation & Securities Bureau, Commissioner of Financial and Insurance Services[9] that determined that viatical settlements are securities under the MUSA. *Michelson*, 254 Mich. App. at 696-97.

The foregoing sources that were considered by the *Michelson* court make clear that *Michelson*'s holding did not establish a new principle of law. Prior to *Michelson* there was no clear and uncontradicted case law in Michigan holding that viatical settlements are not securities under the MUSA. Moreover, "'[t]he fact that a decision may involve an issue of first impression does not in and of itself justify giving it prospective application where the decision does not announce a new rule of law or change existing law, but merely gives an interpretation that has not previously been the subject of an appellate court decision.'"

_____

[9]Viatical Investments - Information for Issuers and Securities and Insurance Agents Bulletin No. 2002-07-SEC (Mich. Dep't of Commerce Oct. 22, 2002), *available at* 2002 Mich. Sec. LEXIS 2.

*Lindsey v. Harper Hosp.*, 455 Mich. 56, 68-69, 564 N.W.2d 861 (1997) (quoting *Jahner v Dep't of Corr.*, 197 Mich. App. 111, 114, 495 N.W.2d 168 (1992)). Thus, "the 'extreme measure' of prospective-only application," *Trentadue*, 479 Mich. at 400, is unwarranted with respect to *Michelson*'s holding that viatical settlements are securities under the MUSA.[10] As viatical settlements were securities under the MUSA prior to January 10, 2003, a MUSA sale of unregistered securities claim can be stated upon which relief could be granted for the sale of viatical settlements prior to that date.

**C.     MUSA - Lack of Knowledge that TPI's Viatical Settlements are Securities**

Barrett, Fox, Polosky, and Tedaldi contend that Deardorff and Macatawa have failed to state a claim because Barrett, Polosky, Fox, and Tedaldi allegedly did not know or could not have known that viatical settlements are securities under the MUSA.[11] Section 410(b) provides that "every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the person sustains the burden of proof that he or she did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." M.C.L.S. § 451.810(b).

---

[10]In a related state court case involving individuals who invested with TPI the Circuit Court for the County of Kent determined that the "*Michelson* decision retains its authority retroactively." *Giese v. Macatawa Bank Corp.*, Case No. 06-11707-CZ, slip op. at 17 (Cir. Ct. for County of Kent Aug. 3, 2007).

[11]The motions filed by Deardorff and Macatawa purport to join in all of the bases in which Barrett, Fox, Polosky, and Tedaldi seek to dismiss the MUSA claims. However, the briefs in support of these motions, which are also responses to the motions to dismiss indicate that Deardorff and Macatawa did not join in this basis for seeking dismissal of the MUSA claims. (Deardoff's Br. in Opp'n 8-9; Macatawa's Br. in Opp'n 7-8.)

Barrett, Fox, Polosky, and Tedaldi's first contention is that they did not know and could not have known that viatical settlements are securities under the MUSA. However, the defense provided by section 410(b) only extends to a lack of knowledge about *facts* upon which liability exists. The defense provided by section 410(b) does not extend to a lack of knowledge about the MUSA itself. *Rzepka v. Farm Estates, Inc.*, 83 Mich. App. 702, 709, 269 N.W.2d 270 (1978) ("Their ignorance of blue sky laws is irrelevant for purposes of this statute, as the exception only speaks of the lack of knowledge of 'the existence of the facts by reason of which the liability is alleged to exist.' Clearly, under the statute, ignorance of the law is no excuse." (citing *Cola v. Terzano,* 322 A.2d 195 (N.J. Super. Ct. Law Div. 1974))).

Barrett, Fox, Polosky, and Tedaldi's second contention is that they did not know and could not have known of the facts relevant to knowing that the viatical settlements sold by TPI were securities under the MUSA. The counterclaim and third-party complaint both refer to the roles of Barrett, Fox, Polosky, and Tedaldi in marketing TPI's viatical settlements. (*E.g.*, Macatawa's First Am. Countercl. ¶¶ 10-11, 22, 32.) A reasonable inference from the marketing activities is that Barrett, Fox, Polosky, and Tedaldi had a sufficient understanding of TPI's viatical settlements that they knew or could have known that TPI's viatical settlements were securities under the MUSA. When the counterclaim and the third-party complaints are read in the light most favorable to Deardorff and Macatawa and reasonable inferences are drawn in favor of Deardorff and Macatawa, Deardorff and

Macatawa could prove a set of facts that show that Barrett, Fox, Polosky, and Tedaldi knew or should have known that TPI's viatical settlements are securities under the MUSA.

**D.     MUSA - Material Aiding Liability under Section 410(b)**

Tedaldi contends that Deardorff and Macatawa fail to state a claim because she did not materially aid in the sale of TPI's viatical settlements.   Section 410(b) provides that employees and agents of the seller who materially aid in the sale of the securities are "liable jointly and severally with and to the same extent as the seller . . . ."  M.C.L.S. § 451.810(b).

Deardoff and Macatawa's third-party complaints both allege that:

> Tedaldi served as Marketing Director for Trade Partners.  She made direct sales to investors of investments touted by Trade Partners, and also supervised a wide network of "external" non-employee salesmen.   According to an exhibit introduced by the United States at [Thomas J.] Smith's sentencing, Tedaldi made $1,472,825.41 in commissions on sales for Trade Partners. Except for Smith and Zmudka, Tedaldi was the most highly compensated Trade Partners employee.

(Macatawa's First Am. Third-Party Compl. ¶ 304.  *Accord* Deardorff's First Am. Third-Party Compl. ¶ 304.)  Deardorff and Macatawa also allege that Tedaldi sold TPI's Monthly Income Programs and Limited Liability Companies, which were investment structures based on viatical settlements.[12]   (Deardorff's First Am. Third-Party Compl. ¶ 318;  Macatawa's First Am. Third-Party Compl. ¶ 318.)  Lastly, Deardorff and Macatawa allege that Tedaldi

---

[12]TPI's Monthly Income Programs and Limited Liability Companies "were structured as loans from the investor to TPI.   The investor was to receive monthly payments for two-years and then a balloon payment in the amount of the investor's principal.   The loan from the investor to TPI was secured by a pool of viaticated policies."  (11/09/2006 Am. Op. 3.)

assisted in concealing TPI fraudulent practices thereby allowing TPI to continue to operate. (Deardorff's First Am. Third-Party Compl. ¶¶ 334-36, 339, 344; Macatawa's First Am. Third-Party Compl. ¶¶ 334-36, 339, 344.) When Deardorff and Macatawa's allegations are read in the light most favorable to Deardorff and Macatawa and all well-pleaded allegations are taken as true, Deardorff and Macatawa could prove a set of facts that show that Tedaldi materially aided in the sale of TPI's viatical settlements.

## E.    Unjust Enrichment

Barrett, Fox, Polosky, and Tedaldi contend that Deardorff and Macatawa have failed to state a claim for unjust enrichment because Deardorff and Macatawa did not articulate the benefit received by Barrett, Fox, Polosky, and Tedaldi. Deardorff and Macatawa contend that Barrett, Fox, Polosky, and Tedaldi were unjustly enriched by trading on Macatawa's name and reputation in selling TPI's viatical settlements.

"Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'" *Kammer Asphalt Paving Co. v. East China Twp. Sch.*, 443 Mich. 176, 185-86, 504 N.W.2d 635 (1993) (quoting *Restatement Restitution*, § 1, at 12). "In order to sustain the claim of unjust enrichment,[13] plaintiff must

_____

[13]An equitable claim for unjust enrichment is distinct from a claim for contribution under Michigan Compiled Laws § 600.2925a. *See Wacker Chem. Corp. v. Bayer Cropscience, Inc.*, No. 05-72207, 2006 U.S. Dist. LEXIS 61483, at *15-17, *18-19, 2006 WL 2404502, at *6-7 (E.D. Mich. Aug. 18, 2006) (analyzing separately an equitable claim for unjust enrichment and a claim for contribution under M.C.L. § 600.2925a). *Cf. In re Air* (continued...)

establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting

to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v.*

*City of Detroit,* 256 Mich. App. 463, 478, 666 N.W.2d 271 (2003) (citing *Barber v SMH*

*(US), Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791 (1993)).

Deardorff and Macatawa allege that Barrett, Fox, Polosky, and Tedaldi

misrepresented the role of Macatawa to individuals who invested in TPI's viatical

settlements. The effect of the false representations presumably extends to Deardorff as he

was then an officer in the trust department at Macatawa. Deardorff and Macatawa further

allege that Barrett, Fox, Polosky, and Tedaldi received a benefit from Deardorff and

Macatawa because the false representation of Macatawa's role in TPI's viatical settlements

provided an assurance to investors. Deardorff and Macatawa allege that it would be

inequitable for Deardorff and Macatawa to be liable to the investors, who invested based on

the false representation about Macatawa's role, if Barrett, Fox, Polosky, and Tedaldi are not

also liable.

When Deardorff and Macatawa's allegations are read in the light most favorable to

Deardorff and Macatawa and all well-pleaded allegations are taken true, Deardorff and

Macatawa have stated a claim of unjust enrichment upon which relief could be granted.

---

[13](...continued)
*Crash Disaster*, 86 F.3d 498, 547-48, 549-52 (6th Cir. 1996) (analyzing separately a claim
for contribution under M.C.L. § 600.2925a).

**F.  Failure to Plead with the Particularity Required by Rule 9(b)**

Barrett, Fox, Polosky, and Tedaldi's next contend that Deardorff and Macatawa have not pleaded the fraud with the particularity required by Rule 9(b).  Rule 9(b) applies to allegations of "fraud or mistake."  Fed. R. Civ. P. 9(b).  In Deardorff and Macatawa's third-party complaints against Barrett and Tedaldi, the first and third counts, which are fraud and unjust enrichment respectively, include allegations of fraud.  In Deardorff and Macatawa's counterclaims against Fox and Polosky the second count, unjust enrichment, includes allegations of fraud.  Rule 9(b) is inapplicable to Deardorff and Macatawa's counts seeking contribution under the MUSA for materially aiding in the sale of unregistered securities because that count does not  allege fraud.  (Dkt. No. 757, 03/07/2007 Op. 6.)

Rule 9(b) provides that

[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  When analyzing the question of whether a party has complied with the Rule 9(b) requirement to plead fraud with particularity, the Court must also consider the "short and plain statement of the claim" requirement of Rule 8(a)(1).  Fed. R. Civ. P. 8(a)(1); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006).  "'Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony.'"  *Id.* (quoting *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988)).  "The purpose of Rule 9(b) is to provide fair notice to

the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (citing *Michaels Bldg. Co.*, 848 F.2d at 679). In order to comply with Rule 9(b), a pleading must, at a minimum, include allegations as to "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). A pleading that fails to comply with the requirements of Rule 9(b) fails to state a claim under Rule 12(b)(6). *Michigan ex rel. Kelley v. McDonald Dairy Co.*, 905 F. Supp. 447, 450 (W.D. Mich. 1995).

Deardorff and Macatawa's allegations against Barrett, Fox, and Polosky are made as part of Deardorff and Macatawa's general allegations about TPI's outside sales representatives. Deardorff and Macatawa allege that TPI's outside sales representatives misrepresented the essential character of TPI's viatical settlements to individual investors in the course of marketing the viatical settlements to those investors. (Deardorff's First Am. Countercl. ¶¶ 11, 38-39, 53; Macatawa's First Am. Countercl. ¶¶ 11, 38-39, 53; Deardorff's First Am. Third-Party Compl. ¶¶ 336, 350; Macatawa's First Am. Third-Party Compl. ¶¶ 336, 350.) Deardorff and Macatawa allege that they were not party to the fraudulent communications. Deardorff and Macatawa allege that the fraudulent communications were between TPI's outside sales representatives and individual investors

or between TPI's employees and individual investors. Based on the fraud alleged by Deardorff and Macatawa, they are not in a position to know the factual details of the fraudulent communications. "[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim . . . ." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). *See also Michaels Bldg. Co.*, 848 F.2d at 680 ("Courts have held that the rule may be relaxed where information is only within the opposing party's knowledge."); (03/07/2007 Op. 8.) Moreover, relaxing the requirements of Rule 9(b) based on a party's lack of access to the facts is most appropriate in cases where the party is alleging fraud by a third-party, as Deardorff and Macatawa allege with respect to Barrett, Fox, and Polosky. *See Corley*, 142 F.3d at 1051 (stating that relaxation of Rule 9(b) is most likely to be appropriate when fraud is alleged against a third-party). Based on the fraud alleged by Deardorff and Macatawa, the relevant factual details are known by the Third-Party Defendants and Counter-Defendants, such as Barrett, Fox, and Polosky, or Plaintiffs. The three groups who are most likely to know the relevant factual details (i.e., Plaintiffs, Counter-Defendants, and Third-Party Defendants) are adverse parties to Deardorff and Macatawa.

Deardorff and Macatawa allege that Tedaldi was TPI's marketing director and that she knew that TPI's viatical settlements were based on fraudulently obtained policies, that TPI was not placing funds sufficient to pay the policy premiums in escrow, and that at least one outside sales representative was telling prospective investors that TPI's viatical

settlements were certificates of deposit. (Deardorff's First Am. Third-Party Compl. ¶¶ 304, 315, 334, 336; Macatawa's First Am. Third-Party Compl. ¶¶ 304, 315, 334, 336.) The greater particularity with which Deardorff and Macatawa allege fraud by Tedaldi satisfies the requirements of Rule 9(b) without considering any limitation posed by information about her allegedly fraudulent activity being in the possession of third-parties.

The Court concludes that Deardorff and Macatawa's third-party complaints and counterclaims, when reviewed in their entirety, allege fraud by Barrett, Fox, Polosky, and Tedaldi with the particularity required by Rule 9(b).

## IV. Conclusion

For the foregoing reasons, Barrett, Fox, Polosky, and Tedaldi's motions to dismiss will be denied. Macatawa and Deardorff's joinder in the portions of Barrett, Fox, Polosky, and Tedaldi's motions that sought to dismiss the MUSA claims will also be denied. An order will be entered consistent with this opinion.


Date:     April 15, 2008            /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE