UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re TRADE PARTNERS, INC.,                    MDL Docket No. 1846
INVESTORS LITIGATION,                          File No. 1:07-CV-738
                                                        1:07-CV-750
                                                        1:07-CV-775

                                               HON. ROBERT HOLMES BELL

_____/

## OPINION REGARDING THIRD-PARTY MOTIONS
## TO DISMISS IN *ADAMSON*, *BAILEY*, AND *MYERS*

This matter is before the Court on several motions to dismiss that have been filed by

Defendants Macatawa Bank and Macatawa Bank Corporation (collectively "Macatawa"),

and Third-Party Defendants Estel Eggleston, Michael Entz, Jeff Farquhar,[1] Bobby

Reynolds, Jim Stanley, and John Wermuth in *Adamson v. Macatawa*, *Bailey v. Macatawa*,

and *Myers v. Macatawa*. The Third-Party Defendants' motions seek dismissal based on a

lack of personal jurisdiction, viatical settlements not being securities under the Michigan

Uniform Securities Act ("MUSA"), a failure to plead with the particularity required by

Federal Rule of Civil Procedure 9(b), and a failure to state a claim of unjust enrichment.

Macatawa also moves for judgment on the pleadings as to Plaintiffs' MUSA claim. The

---

[1]Throughout this opinion the Court will use Jeff Farquhar's full name because in
*Adamson v. Macatawa* there are two third-party defendants with the last name Farquhar.
(File No. 1:07-CV-750, Dkt. No. 130, *Adamson* - Macatawa's First Am. Third-Party Compl.
¶¶ 11-12.)

issues presented by these motions are similar, and in some instances identical, to the issues that the Court resolved in an April 15, 2008, opinion in *Jenkins v. Macatawa*, which is another case that is part of this MDL action. (File No. 1:07-MD-1846, Dkt. No. 211, 04/15/2008 Op.) For the reasons that follow, all of these motions will be denied.

## I. Background

This MDL action arises from the sale of viatical settlements by Trade Partners Inc. ("TPI") between 1996 and 2003. Defendant Macatawa Bank is a member bank of Defendant Macatawa Bank Corporation. Macatawa Bank is the successor by merger to Grand Bank. Grand Bank provided certain banking services related to TPI's viatical settlements. Many of the events relevant to these motions occurred prior to the merger; however, consistent with the Court's practice in earlier opinions in this MDL action, the Court refers to Grand Bank as Macatawa. (*E.g.*, File No. 1:07-MD-1846, Dkt. No. 25, 11/06/2007 Op. 2 n.2; 04/15/2008 Op. 2 n.2.)

The *Adamson*, *Bailey*, and *Myers* Plaintiffs allege several causes against Macatawa, but only the *Adamson*, *Bailey*, and *Myers* Plaintiffs' state securities law claims are relevant for purposes of these motions. The *Adamson*, *Bailey*, and *Myers* Plaintiffs allege their state securities law claims under the Texas Securities Act. (File No. 1:07-CV-750, Dkt. No. 101, *Adamson* Pls.' Sixth Am. Compl. ¶¶ 56-58; File No. 1:07-CV-738, Dkt. No. 114, *Bailey* Pls.' Fourth Am. Compl. ¶¶ 56-58; File No. 1:07-CV-775, Dkt. No. 103, *Myers* Pls.' Third Am. Compl. ¶¶ 56-59.) Macatawa's third-party complaints in *Adamson*, *Bailey*, and *Myers*

contain the same three claims, (1) fraud, (2) contribution under the MUSA for materially aiding in the sale of unregistered securities, and (3) unjust enrichment. (*Adamson* - Macatawa's First Am. Third-Party Compl. ¶¶ 66-78; File No. 1:07-CV-738, Dkt. No. 146, *Bailey* - Macatawa's First Am. Third-Party Compl. ¶¶ 66-78; File No. 1:07-CV-775, Dkt. No. 135, *Myers* - Macatawa's First Am. Third-Party Compl. ¶¶ 71-83.)

Although Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth filed their motions to dismiss against Macatawa, Macatawa joins their motions with respect to the MUSA. Macatawa does not agree to the dismissal of its MUSA claims. Rather, to the extent that the Third-Party Defendants prevail on their motions to dismiss the MUSA claims asserted against them, Macatawa moves for the dismissal of Plaintiffs' MUSA claim on the same basis.[2] (File No. 1:07-CV-738, Dkt. No. 132, *Bailey* - Macatawa's Br. re Dismissal of MUSA Claims 1; File No. 1:07-CV-750, Dkt. No. 114, *Adamson* - Macatawa's Br. re. Dismissal of MUSA Claims 1; File No. 1:07-CV-775, Dkt. No. 121, *Myers* - Macatawa's Br. re Dismissal of MUSA Claims 1.)

## II. Applicable Federal Law

"When analyzing questions of federal law 'in a federal multidistrict litigation[,] there

---

[2]Although Macatawa's motions are titled as motions to dismiss, Macatawa moves under Rule 12(c). Hence, Macatawa's motions are actually for judgment on the pleadings. This characterization, however, does not alter the substantive consideration of the motion because a Rule12(c) motion is evaluated "under the standards for dismissal under Rule 12(b)(6)." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (citing *Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986)).

is a preference for applying the law of the transferee district . . . .'" (11/07/2007 Op. 4 (quoting *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 912 n.17 (6th Cir. 2003) (citations omitted)).)  The preference for the law of the transferee district is limited in instances where the precedent in the transferee circuit is unique.  *Id.*  None of the parties to these motions to dismiss or for judgment on the pleadings has contended that the Sixth Circuit's precedent applicable to these motions is unique.  Therefore, the Court will apply the law of the Sixth Circuit on questions of federal law that arise as part of these motions to dismiss and for judgment on the pleadings.

### III.  Personal Jurisdiction

Jeff Farquhar and Wermuth move to dismiss Macatawa's third-party complaints against them in *Bailey* and *Myers*, respectively, pursuant Rule 12(b)(2) based on a lack of personal jurisdiction.[3]  Although Jeff Farquhar is also a third-party defendant in *Adamson*, he does not dispute that the transferor court in *Adamson*, the Western District of Oklahoma, has personal jurisdiction over him.  Jeff Farquhar is a resident of Broken Arrow, Oklahoma. Wermuth is a resident of Elm Grove, Wisconsin. Jeff Farquhar and Wermuth were outside sales people for TPI.  Jeff Farquhar and Wermuth sold TPI's viatical settlements and received sales commissions from TPI.  (File No. 1:07-CV-738, Dkt. No. 112, Jeff

---

[3]Eggleston, Entz, Reynolds, and Stanley do not contest the personal jurisdiction of the transferor court in *Adamson*, which is the Western District of Oklahoma.  The Court previously determined that the transferor courts in *Bailey* and *Myers* have specific personal jurisdiction over Macatawa.  (File No. 1:07-MD-1846, Dkt. No. 25, 11/06/2007 Op 7-8, 13-20, 29-33.)

Farquhar's Ans. to Macatawa's Third-Party Compl. ¶ 17; File No. 1:07-CV-775, Dkt. No. 101, Wermuth's Ans. to Macatawa's Third-Party Compl. ¶ 26.)

In matters consolidated for pretrial proceedings pursuant to 28 U.S.C. § 1407, "'the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer.'" *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987) (quoting *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976)). Therefore the Court must determine whether the transferor courts in *Bailey* and *Myers* have personal jurisdiction over Jeff Farquhar and Wermuth, respectively. "In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000), and *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)). *See also* Fed. R. Civ. P. 4(e)(1), (k)(1)(A). A federal court must analyze jurisdiction in a two-step process. First, the court must determine if state law grants the court authority to exercise personal jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). Second, the court must determine if the exercise of personal jurisdiction over the defendant satisfies the Fourteenth Amendment's Due Process Clause. *Id.* The party asserting that the court has jurisdiction "bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant." *Intera Corp.*, 428 F.3d at 615 (citing *Calphalon Corp.*, 228 F.3d at 721, and

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The Court has determined that these motion to dismiss for lack of personal jurisdiction can be decided based upon the written submissions, without an evidentiary hearing. Therefore, the Court "'must consider the pleadings and affidavits in the light most favorable'" to the third-party plaintiffs. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). If the party asserting that the court has jurisdiction meets the burden of making a prima facie showing that personal jurisdiction exists, then the motion to dismiss should be denied, "'notwithstanding any controverting presentation by the moving party.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

## A.     Statutory Jurisdiction

### 1.     California - Wermuth in *Myers*

California's jurisdictional statute, Cal. Civ. Proc. Code § 410.10,[4] permits California courts to exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Due Process Clause of the Fourteenth Amendment. *Vons Companies, Inc. v. Seabest Foods, Inc.*, 14 Cal.4th 434, 444, 926 P.2d 1085 (1996); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). "Because California's long-arm jurisdictional statute

---

[4]California's jurisdictional statute provides:

A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.

Cal. Civ. Proc. Code § 410.10 (West 2008).

is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Dole Food Co.*, 303 F.3d at 1110 (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). Therefore, the statutory analysis of whether the California court has jurisdiction over Wermuth is coextensive with the due process analysis, which is addressed in Section III.B.2, *infra*.

### 2. Texas - Jeff Farquhar in *Bailey*

Texas's jurisdictional statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.042,[5] permits Texas courts to exercise personal jurisdiction "'as far as the federal constitutional requirements of due process will permit.'" *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007) (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). *Accord Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005). Because Texas's long-arm statute is coextensive with the federal due process requirements, the two step analysis under state and federal law collapse into the single due

---

[5]Texas's jurisdictional statute for nonresident defendants provides:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
(2) commits a tort in whole or in part in this state; or
(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2008).

process inquiry. *PHC-Minden*, 235 S.W.3d at 166; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000). Therefore, the statutory analysis of whether the Texas court has jurisdiction over Jeff Farquhar is coextensive with the due process analysis, which is addressed in Section III.B.3, *infra*.

**B.     Due Process Requirements**

In order to subject a nonresident defendant to personal jurisdiction "due process requires only that . . . he have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

**1.     The *Southern Machine Company* Three Part Test**

In *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit established a three part test for determining whether the exercise of specific personal jurisdiction comports with due process.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (quoting *S. Mach. Co.*, 401 F.2d at 381).

### a.  Purposeful Availment

"The purposeful availment requirement serves to protect a defendant from being haled into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts." *Intera Corp.*, 428 F.3d at 616 (quoting *Calphalon Corp.*, 228 F.3d at 722).  In evaluating whether a defendant has purposefully availed itself of the forum, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" must be considered.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

> [W]here a defendant "has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." [*Burger King Corp.*, 471 U.S.] at 476 (internal citation omitted).  In addition, physical presence in a forum state is not required, and the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."  *Id.* (citations omitted).

*Air Prods. & Controls*, 503 F.3d at 551.  The mere fact that the defendant entered into a contract with a resident of the forum state, however, does not mean that the defendant purposefully availed itself of the "benefits and protections" of forum law.  *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 151 (6th Cir. 1997).

### b.  Arising From

The second part of the *Southern Machine* test requires that the cause of action arise from the defendant's activities in the forum.  "'[T]he "arising from" requirement is satisfied if the cause of action is "related to" or "connected with" the defendant's forum contacts.'"

*Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (quoting *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1091 n.2 (6th Cir. 1989)). The "arising from" requirement is also satisfied "'when the operative facts of the controversy arise from the defendant's contacts with the state.'" *Intera Corp.*, 428 F.3d at 617 (quoting *Calphalon Corp.*, 228 F.3d at 723). This is a "'lenient standard.'" *Air Prods. & Controls*, 503 F.3d at 553 (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).

      **c.**    **Reasonableness**

The third part of the *Southern Machine* test requires that "'the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Youn*, 324 F.3d at 419 (quoting *S. Mach. Co.*, 401 F.2d at 381). "Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)). "If prongs one and two of *Southern Machine* test are satisfied, then there is an inference that the reasonableness prong is satisfied as well." *Id.* (citing *CompuServe*, 89 F.3d at 1268). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other

considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.

        **2.**      **California - Wermuth in *Myers***

        **a.**      **Purposeful Availment**

Macatawa contends that Wermuth purposefully availed himself of California by soliciting investors in California. Wermuth does not contend that he did not sell TPI's viatical settlements to investors in California. Rather, Wermuth contends that his contacts with California were random and fortuitous. When the Court considers the pleadings in the light most favorable to Macatawa, as the Court must do, *Serras*, 875 F.2d at 1214, Wermuth solicited California residents to invest in TPI's viatical settlements and such solicitations resulted in California residents investing in TPI's viatical settlements with Wermuth serving as the outside sales person. The contemplated future consequence of a TPI outside sales person soliciting sales from California residents is that such residents would invest in TPI's viatical settlements. By soliciting business in California, Wermuth's contacts with California exceed those of a person who has merely entered into a contract with a California resident. Additionally, each viatical settlement Wermuth sold created a continuing relationship with a California resident. (*See* 11/06/2007 Op. 14-15 (discussing Macatawa's continuing relationship with California residents).) Wermuth directs the Court to *Brady v. Burtt*, 979 F. Supp. 524 (W.D. Mich. 1997), in which the Court held that a corporate officer was not subject to personal jurisdiction for his role in negotiating a series of corporate

transactions that involved Michigan residents. 979 F. Supp. at 528-30. *Brady* does not counsel against personal jurisdiction over Wermuth because in *Brady* there was no allegation that the corporate officer had solicited business with the Michigan residents, thus the contacts with Michigan were fortuitous. *Id.* at 526-27, 529-30. Wermuth also directs the Court to the associate agreements that TPI entered into with its outside sale people. (File No. 1:07-CV-775, Dkt. No. 99, Wermuth's Mot. to Dismiss, Ex. A, Associate Agreement.) The thirteenth paragraph of the associate agreement provides that "venue shall be in the state and federal courts in Kent County, Michigan." (Associate Agreement ¶ 13.) This paragraph applies to litigation under the associate agreement, but Macatawa's third-party complaint is not premised on the associate agreement. Also, on its face, the associate agreement does not bind Macatawa and Wermuth has offered no explanation for why it would bind Macatawa. Thus, Macatawa has made a prima facie showing that Wermuth purposefully availed himself of the privilege of acting in California.

### b.  Arising From

Macatawa's third-party claims against Wermuth are based on sales of TPI's viatical settlements to California residents. The operative facts of Macatawa's fraud and unjust enrichment claims arise from the representations that Wermuth made in the course of those transactions. The operative facts of Macatawa's MUSA claim are the transactions themselves. Thus, Macatawa has made a prima facie showing that its claims arise from Wermuth's activities in California.

### c.     Reasonableness

Although litigating in California will impose a burden on Wermuth, he has not contended that he will incur a unique burden beyond what is necessarily imposed on any non-resident defendant.  California has a significant interest in Macatawa's claim against Wermuth as it involves the alleged sale of unregistered securities to California residents.  Macatawa has a significant interest in bringing this claim in California because it will enable the *Myers* Plaintiffs' claims against Macatawa and Macatawa's claims against Wermuth to be resolved in a single forum.  While Michigan assuredly has a significant interest in this litigation, permitting Macatawa's claim against Wermuth to proceed in California furthers Michigan's interest because it provides a single forum for all of the parties related to TPI's transactions with the *Myers* Plaintiffs.

### 3.     Texas - Jeff Farquhar in *Bailey*

### a.     Purposeful Availment

Macatawa contends that Jeff Farquhar purposefully availed himself of Texas by soliciting investors in Texas.  Jeff Farquhar contends that his contacts with Texas were random and fortuitous, but he does not contend that he did not sell TPI's viatical settlements to investors in Texas.  When the Court considers the pleadings in the light most favorable to Macatawa, as the Court must do, *Serras*, 875 F.2d at 1214, Jeff Farquhar solicited Texas residents to invest in TPI's viatical settlements and such solicitations resulted in Texas residents investing in TPI's viatical settlements with Jeff Farquhar serving as the outside

sales person. The contemplated future consequence of a TPI outside sales person soliciting sales from Texas residents is that such residents would invest in TPI's viatical settlements. By soliciting business in Texas, Jeff Farquhar's contacts with Texas exceed those of a person who has merely entered into a contract with a Texas resident. Jeff Farquhar also directs the Court to *Brady*. *Brady* does not counsel against personal jurisdiction over Jeff Farquhar because in *Brady* there was no allegation that the corporate officer had solicited business with residents of the forum-state, thus the contacts with forum-state were fortuitous. 979 F. Supp. at 526-27, 529-30. Jeff Farquhar also directs the Court to the associate agreements which TPI entered into with its outside sales people. (File No. 1:07-CV-738, Dkt. No. 106, Jeff Farquhar's Mot. to Dismiss, Ex. A, Associate Agreement.) The fifteenth paragraph of the associate agreement provides that "venue shall be in the state and federal courts in Kent County, Michigan." (Associate Agreement ¶ 15.) This paragraph applies to litigation under the associate agreement, but Macatawa's third-party complaint is not premised on the associate agreement. Also, on its face, the associate agreement does not bind Macatawa and Jeff Farquhar has offered no explanation for why it would bind Macatawa. Thus, Macatawa has made a prima facie showing that Jeff Farquhar purposefully availed himself of the privilege of acting in Texas.

### b. Arising From

Macatawa's third-party claims against Jeff Farquhar are based on sales of TPI's viatical settlements to Texas residents. The operative facts of Macatawa's fraud and unjust

enrichment claims arise from the representations that Jeff Farquhar made in the course of those transactions. The operative facts of Macatawa's MUSA claim are the transactions themselves. Thus, Macatawa has made a prima facie showing that its claims arise from Jeff Farquhar's activities in Texas.

### c. Reasonableness

Although litigating in Texas will impose a burden on Jeff Farquhar, he has not contended that he will incur a unique burden beyond what is necessarily imposed on any non-resident defendant. Texas has a significant interest in Macatawa's claim against Jeff Farquhar as it involves the alleged sale of unregistered securities to Texas residents. Macatawa has a significant interest in bringing this claim in Texas because it will enable the *Bailey* Plaintiffs' claims against Macatawa and Macatawa's claims against Jeff Farquhar to be resolved in a single forum. While Michigan assuredly has a significant interest in this litigation, permitting Macatawa's claim against Jeff Farquhar to proceed in Texas furthers Michigan's interest because it provides a single forum for all of the parties related to TPI's transactions with the *Bailey* Plaintiffs.

As Macatawa has made a prima facie showing that Wermuth and Jeff Farquhar are subject to specific personal jurisdiction in California and Texas, respectively, Wermuth's and Jeff Farquhar's motions to dismiss based on a lack of personal jurisdiction will be denied.

## IV.  Failure to State a Claim Upon Which Relief Can Be Granted

Rule 12(b)(6) enables the court to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  "'[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).  The court must construe the third-party complaint in the light most favorable to the non-moving party, accept all well-pleaded allegations as true, and draw all reasonable inferences in favor of the non-moving party.  *Id.*; *Amini v. Oberlin Coll.*, 259 F.3d 493, 497 (6th Cir. 2001).  In considering a Rule 12(b)(6) motion against a third-party complaint, a court is generally limited to the third-party complaint and the attached exhibits.  *Amini*, 259 F.3d at 502.

## A.     MUSA - Viatical Settlements as Securities Prior to January 10, 2003

Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth contend that viatical settlements were not securities under the MUSA prior to January 10, 2003.  On January 10, 2003, the Michigan Court of Appeals held that the "MUSA's use of the term 'security' includes viatical settlements."  *Michelson v. Voison*, 254 Mich. App. 691, 697, 658 N.W.2d 188 (2003).  The Court previously analyzed whether viatical settlements were securities under the MUSA prior to January 10, 2003. (04/15/2008 Op. 13-16.) The Court concluded that "viatical settlements were securities under the MUSA prior to January 10, 2003, [and]

a MUSA sale of unregistered securities claim can be stated upon which relief could be granted for the sale of viatical settlements prior to that date." (04/15/2008 Op. 16.)  The rationale offered by Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth, is largely identical to the rationale that the Court addressed in its April 15, 2008, opinion. Thus, Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth have not offered a reason for the Court to reach a contrary conclusion.  Macatawa's motions for judgment on the pleadings as to Plaintiffs' MUSA claims adopt the rationale of Jeff Farquhar and Wermuth, so Macatawa's motions also do not offer a reason for the Court to reach a result contrary to its April 15, 2008, opinion.[6]

## B.    Unjust Enrichment

Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth contend that Macatawa has failed to state a claim for unjust enrichment because Macatawa did not articulate the benefit received by Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth.  Macatawa contends that Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth were unjustly enriched by trading on Macatawa's name and reputation in selling TPI's viatical settlements.

"Even though no contract may exist between two parties, under the equitable doctrine

---

[6]The Court notes that Macatawa's motions to dismiss the MUSA claims of the *Adamson*, *Bailey,* and *Myers* Plaintiffs also fails because the *Adamson*, *Bailey*, and *Myers* Plaintiffs allege their state securities law claims under the Texas Securities Act, not the MUSA.  (*Adamson* Pls.' Sixth Am. Compl. ¶¶ 56-58;  *Bailey* Pls.' Fourth Am. Compl. ¶¶ 56-58; *Myers* Pls.' Third Am. Compl. ¶¶ 56-59.)

of unjust enrichment, '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'" *Kammer Asphalt Paving Co. v. East China Twp. Sch.*, 443 Mich. 176, 185, 504 N.W.2d 635 (1993) (quoting *Restatement Restitution*, § 1, at 12). "In order to sustain the claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit,* 256 Mich. App. 463, 478, 666 N.W.2d 271 (2003) (citing *Barber v SMH (US), Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791 (1993)). "When unjust enrichment exists, 'the law operates to imply a contract in order to prevent' it." *Keywell and Rosenfeld v. Bithell*, 254 Mich. App. 300, 327-28, 657 N.W.2d 759 (2002) (quoting *Barber*, 202 Mich. App. at 375). "'However, a contract will be implied only if there is no express contract covering the same subject matter.'" *Id.* (quoting *Barber*, 202 Mich. App. at 375).

Macatawa alleges that Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth misrepresented the role of Macatawa to individuals who invested in TPI's viatical settlements. Macatawa further alleges that Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth received a benefit from Macatawa because the false representation of Macatawa's role in TPI's viatical settlements provided an assurance to investors. (*Adamson* - Macatawa's First Am. Third-Party Compl. ¶¶ 77-78; *Bailey* - Macatawa's First Am. Third-Party Compl. ¶¶ 77-78; *Myers* - Macatawa's First Am. Third-Party Compl. ¶¶ 82-83.) Macatawa alleges that it would be inequitable for Macatawa to be liable to the

investors who invested based on the false representation about Macatawa's role, if Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth are not also liable.

When Macatawa's allegations are read in the light most favorable to Macatawa and all well-pleaded allegations are taken true, Macatawa has stated a claim of unjust enrichment upon which relief could be granted.

## C.    Failure to Plead with the Particularity Required by Rule 9(b)

Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth next contend that Deardorff and Macatawa have not pleaded the fraud with the particularity required by Rule 9(b). Rule 9(b) applies to allegations of "fraud or mistake." Fed. R. Civ. P. 9(b). In Macatawa's third-party complaints against Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth, the first and third counts, which are fraud and unjust enrichment, respectively, include allegations of fraud. Rule 9(b) is inapplicable to Macatawa's counts seeking contribution under the MUSA for materially aiding in the sale of unregistered securities because that count does not allege fraud. (File No. 1:03-CV-321, Dkt. No. 757, 03/07/2007 Op. 6; 04/15/2208 Op. 21.) Macatawa's count for contribution under the MUSA alleges that the Third-Party Defendants were "employees and agents of the seller who materially aided in the sale of such unregistered securities." (*Adamson* - Macatawa's First Am. Third-Party Compl. ¶ 75; *Bailey* - Macatawa's First Am. Third-Party Compl. ¶ 75; *Myers* - Macatawa's First Am. Third-Party Compl. ¶ 80.) The elements of Macatawa's MUSA claims against the Third-Party Defendants for the sale of unregistered securities that

were required to be registered are: (1) the Third-Party Defendant was the agent or employee of a seller, (2) the Third-Party Defendant materially aided the seller (3) in selling (4) a security (5) that was required to be registered under the MUSA (6) but was not registered. M.C.L.A. § 451.701, .810(b) (West 2000); (*see also* File No. 1:03-CV-321, Dkt. No. 679, 11/09/2006 Am. Op. 25-26.)  Thus, Macatawa's MUSA claim is a securities claim, but not a securities fraud claim.

Rule 9(b) provides that,

[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  When analyzing the question of whether a party has complied with the Rule 9(b) requirement to plead fraud with particularity, the Court must also consider the "short and plain statement of the claim" requirement of Rule 8(a)(2).  Fed. R. Civ. P. 8(a)(2); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v. Gibson*, 355 U.S. 41, 47 (1957)."  *Bell Atl. Corp. v. Twombly*, 550 U.S.--, 127 S. Ct. 1955, 1964 (2007) (omission in *Twombly*).  "'Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony.'" *Sanderson*, 447 F.3d at 876 (quoting *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988)).  "The purpose of Rule 9(b) is to

provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (citing *Michaels Bldg. Co.*, 848 F.2d at 679). In order to comply with Rule 9(b), a pleading must, at a minimum, include allegations as to "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). A pleading that fails to comply with the requirements of Rule 9(b) fails to state a claim under Rule 12(b)(6). *Michigan ex rel. Kelley v. McDonald Dairy Co.*, 905 F. Supp. 447, 450 (W.D. Mich. 1995).

Macatawa's allegations against Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth are made as part of Macatawa's general allegations about TPI's outside sales representatives. Macatawa alleges that TPI's outside sales representatives misrepresented the essential character of TPI's viatical settlements to individual investors. (*Adamson* - Macatawa's First Am. Third-Party Compl. ¶¶ 56, 70-71, 77-78; *Bailey* - Macatawa's First Am. Third-Party Compl. ¶¶ 50-56, 70-71, 77-78; *Myers* - Macatawa's First Am. Third-Party Compl. ¶¶ 61,74-75, 82-83.) Macatawa alleges that they were not party to the fraudulent communications. (*Adamson* - Macatawa's First Am. Third-Party Compl. ¶¶ 56, 70; *Bailey* - Macatawa's First Am. Third-Party Compl. ¶¶ 50, 70; *Myers* - Macatawa's First Am. Third-

Party Compl. ¶¶ 61,75.) Macatawa alleges that the fraudulent communications were between TPI's outside sales representatives and individual investors or between TPI's employees and individual investors. Based on the fraud alleged by Macatawa, Macatawa is not in a position to know the factual details of the fraudulent communications. "[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim . . . ." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). *See also Michaels Bldg. Co.*, 848 F.2d at 680 ("Courts have held that the rule may be relaxed where information is only within the opposing party's knowledge."); (03/07/2007 Op. 8; 04/15/2008 Op. 23.) Moreover, relaxing the requirements of Rule 9(b) based on a party's lack of access to the facts is most appropriate in cases where the party is alleging fraud by a third-party, as Macatawa alleges with respect to Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth. *See Corley*, 142 F.3d at 1051 (stating that relaxation of Rule 9(b) is most likely to be appropriate when fraud is alleged "against one or more third parties." (citing *Schiffels v. Kemper Fin. Serv., Inc.*, 978 F.2d 344, 353 (7th Cir. 1992), and *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992))). Based on the fraud alleged by Macatawa, the relevant factual details are known by the Third-Party Defendants, such as Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth, or by Plaintiffs. The groups who are most likely to know the relevant factual details (*i.e.*, Plaintiffs and Third-Party Defendants) are adverse parties to Macatawa.

The Court concludes that Macatawa's third-party complaints, when reviewed in their entirety, allege fraud by  Eggleston, Entz, Jeff Farquhar, Reynolds, Stanley, and Wermuth with the particularity required by Rule 9(b).

## V.  Conclusion

For the foregoing reasons, Eggleston, Entz, Reynolds, and Stanley's, Jeff Farquhar's and Wermuth's motions to dismiss are denied.  Macatawa's motions for judgment on the pleadings as to Plaintiffs' MUSA claims, which are based on a joinder in the portions of Jeff Farquhar's and Wermuth's motions related to the MUSA, are also denied.  An order will be entered consistent with this opinion.


Dated: <u>August 22, 2008</u>                         /s/ Robert Holmes Bell
                                                                     ROBERT HOLMES BELL
                                                                     UNITED STATES DISTRICT JUDGE