UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

IN RE TRADE PARTNERS, INC. ) Case No. 1:07-md-1846
INVESTOR LITIGATION )
                                          ) Honorable Robert Holmes Bell

## MEMORANDUM OPINION AND FINDINGS

On June 26, 2007, the Judicial Panel on Multi-District Litigation transferred to this court four cases brought by numerous plaintiffs, each of whom purchased viatical settlements sold by Trade Partners, Inc. between 1996 and 2003. The four MDL cases have been consolidated for pretrial purposes with cases pending before this court, which were also brought by purchasers of viatical settlements. Over 600 individuals and entities seek relief in these cases. Defendant Macatawa Bank, a member bank of defendant Macatawa Bank Corporation, is the successor by merger to Grand Bank. Grand Bank provided certain banking services related to the sale of viatical settlements by Trade Partners, Inc. In each of the consolidated diversity actions, plaintiffs bring state-law claims against Macatawa Bank and Macatawa Bank Corporation arising from the involvement of Grand Bank in these transactions.

In October, 2008, counsel for defendants and virtually all plaintiffs entered into a series of written agreements contemplating settlement of the claims of all or virtually all of the plaintiffs' claims. Part of the consideration for settlement involved the issuance of common stock and warrants of defendant Macatawa Bank Corporation to the plaintiffs. On November 13, 2008, after a public hearing, the court approved the settlement as fair and determined that the stock and

warrants issued pursuant to the settlement would be exempt from registration by virtue of section 3(a)(10) of the Securities Act of 1933. (Mem. Op. & Order, docket #'s 387, 388).

Because of global market conditions prevailing at the end of 2008 and the first quarter of 2009, defendant Macatawa Bank Corporation found it impossible to comply with the terms of the settlement regarding issuance of common stock. The parties thereafter renegotiated the settlement, with the able assistance of Bruce Neckers, one of the court's Facilitative Mediators. On January 26, 2009, the parties reached a revised settlement, ultimately embodied in a First Amended Settlement Agreement. Under the Amended Agreement, plaintiffs would receive more cash in lieu of the shares of Macatawa Bank Corporation promised under the original agreement. Plaintiffs would also receive warrants of Macatawa Bank Corporation. The parties have jointly moved for a determination of the fairness of the revised settlement, as well as a determination that the warrants issued thereunder would be exempt from registration.

United States District Judge Robert Holmes Bell has referred this matter to me for decision. The court conducted an open hearing on this matter on February 20, 2009, at 10:30 a.m. The hearing was conducted jointly with a hearing in *William A. Giese, et al. v. Macatawa Bank Corporation, et al.*, Kent County, Michigan Circuit Court No. 06-11707-CZ (Honorable Dennis B. Leiber), a state circuit court action involving similar claims by hundreds of plaintiffs. Attorney Thomas Farrell, counsel for virtually all plaintiffs, appeared by telephone and addressed the court on behalf of his clients. Attorney Sarah Howard appeared and addressed the court on behalf of defendants. Also present at the hearing were Wilma Seng, David Coffman, and Maurice Jones, who are individual plaintiffs. The court heard argument from counsel and received into evidence joint

hearing exhibits 1 through 4, which include a First Amended Settlement and Release and Stock and Warrant Issuance Agreement dated January 30, 2009. (Ex. 2).

The original Settlement Agreement was the product of a multi-day mediation with mediator Bruce W. Neckers. In general, it provided for the payment of $3 million, the issuance of common stock valued at $3 million, and the issuance of stock warrants to settle plaintiffs' claims upon satisfaction of certain contingencies, including the agreement of a defined percentage of plaintiffs to accept the settlement. The original Settlement and Release and Stock and Warrant Issuance Agreement, along with its attachments, represented a more definitive and comprehensive agreement regarding settlement.

Under the First Amended Settlement Agreement, defendants will pay plaintiffs $6 million in cash; the revised agreement contemplates no issuance of common stock. Plaintiffs will, however, receive 1.5 million warrants for common stock, with a strike price of $9.00 per share, exercisable for five years. The purpose of the February 20, 2009 hearing was to assess the fairness of the First Amended Settlement Agreement.

Notice of the February 20, 2009 hearing was provided by plaintiffs' counsel, both by regular mail and, where possible, by e-mail, on February 2 through 4, 2009, to all plaintiffs in these consolidated cases. (Aff. of Thomas Farrell, docket # 437). As indicated, three plaintiffs appeared at the hearing; Ms. Coffman and Mr. Jones (through his daughter Dorias) posed questions concerning the settlement which were addressed to plaintiff's counsel. No other plaintiff appeared. No one objected to the fairness of the stock issuance.

On the basis of the entire record in this case, including the evidence and exhibits submitted at the hearing, the court makes the following findings.

**Findings of Fact**

Macatawa Bank Corporation is a financial holding company registered with, and subject to regulation by, the Federal Reserve Board under the Bank Holding Companies Act. Its common stock is registered with the Securities and Exchange Commission (SEC) and is traded on the NASDAQ exchange. Macatawa Bank is a Michigan charter bank with depository accounts insured by the FDIC. As part of the First Amended Settlement Agreement, defendants and their insurers have contributed cash to the proposed settlement, and Macatawa Bank Corporation has agreed to issue to plaintiffs 1.5 million warrants with a strike price of $9.00 each, exercisable for five years. The value of the settlement is six million dollars, plus the value of the warrants. The parties now seek a ruling from this court approving the conditions surrounding the issuance of this common stock and finding that the terms and conditions are fair within the meaning of section 3(a)(10) of the Securities Act of 1933. That section provides as follows:

> [A]ny security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court. . . .

On October 20, 1999, the SEC issued Revised Staff Legal Bulletin No. 3(CF) setting forth suggested conditions that must be met to perfect the section 3(a)(10) exemption. Although the Staff Legal Bulletin is not binding on the court, the court finds it to be helpful and persuasive in setting forth factors to be considered in determining fairness for purposes of section 3(a)(10). The court makes the following findings relevant to those factors.

1. <u>Exchange</u>: The securities proposed to be issued under the Agreement would be issued in exchange for settlement of claims, and not offered for cash.

2. <u>Approving Entity</u>: This court is authorized by section 3(a)(10) of the Securities Act of 1933 to consider the fairness of the securities proposed to be issued as part of the Agreement and to approve the transaction.

3. <u>Fairness Determination</u>: The court finds that the proposed issuance and exchange of securities under the Agreement are fair after considering the totality of the following evidence:

   a. The Agreement comes with the recommendation of counsel for both plaintiffs and defendants, following an additional day of mediation with Mediator Bruce W. Neckers.

   b. The underlying matter has been the subject of extensive discovery. The docket sheets of these cases in both state and federal courts reflect the nature of that discovery for over four years. Hundreds of depositions have been taken, and hundreds of thousands of documents exchanged and examined. This matter has been vigorously litigated by all parties. As would be expected, counsel for plaintiffs and defendants differ significantly on the merits of plaintiffs' claims and their likelihood of success at trial.

   c. Defendants have viable defenses to plaintiffs' claims. Judge Bell dismissed large segments of plaintiffs' claims in his August 15, 2008 Opinion and Order ruling on summary judgment motions. Further, similar motions for dispositive relief were pending in the Kent County Circuit Court at the time the original Agreement was reached in October 2008. Defendants' counsel has stated an intention to file additional dispositive motions in this court, relating to their argument that many of the securities claims are time-barred. Defendants have other defenses which cannot be resolved as a matter of law, such as causation and Michigan's allocation of damages rule.

   d. Macatawa Bank Corporation's financial condition is a matter of public record. As a publicly held company, it is required by federal securities laws to accurately report its financial condition and any

material changes in that condition, and it has filed those reports. The law firms of Moulton & Meyer and Nickens Keeton, representing the vast majority of plaintiffs, have had access to those reports. In addition, those reports are publicly available to anyone wishing to inspect them.

e. The court has reviewed discovery produced in these cases relating to defendants' available insurance coverage, which has been significantly depleted by defense costs advanced to date. The court is also aware of the defenses that the insurers have raised to providing any coverage. The court finds that the amount of cash being contributed by the insurers under the Agreement represents a significant portion of remaining coverage notwithstanding the defenses.

f. The cash that is to be offered under the Amended Agreement -- $6 million -- gives plaintiffs the same value as was provided under the original settlement agreement, which was $6 million but in a mix of common stock and cash. In this regard, the Amended Agreement offers plaintiffs more immediate value, in that those plaintiffs who would have wished to immediately sell their stock under the original agreement will now save the transaction costs in doing so.

g. The stock warrants that are to be issued under the Agreement (1,500,000) entitle the holders to purchase additional stock, if the holders so choose, within five years of the original issuance at a strike price of $9.00. This will allow plaintiffs accepting the Agreement an opportunity to participate in the growth experienced by Macatawa Bank and Macatawa Bank Corporation in the next five years. The warrants also will contain a form of anti-dilution provision negotiated by the parties.

h. This court has appointed Special Master Mickey Mills to review the claims and the settlement package, and to recommend the amount each plaintiff would receive upon accepting the settlement. Mr. Mills is experienced in this type of work, and his recommendation is subject to review by this court.

i. Every plaintiff will have the opportunity to examine amounts that are offered in payment for his, her, or its claim, as well as every other plaintiff's claim, prior to accepting. Every plaintiff has the independent right to accept or reject the settlement.

j. While settlement is usually preferred in litigation because of its ability to reduce costs and conserve court resources, those considerations are particularly present here. This multi-district litigation involves hundreds of plaintiffs, plus third-party defendants and counter-defendants. The monetary cost involved in trying all of these cases, even if more than one claim would be tried at a time, would be astronomical. This is to say nothing of the years such an endeavor would take and the remaining costs in completing discovery and pretrial motions. Without settlement, litigation costs will consume all remaining insurance coverage of defendants well before even a small number of claims could be tried.

k. The court determines that the total consideration to be received by plaintiffs under the Agreement is within the fair range of settlement options, given the relative strength of the claims and defenses and the substantial possibility of a much lower recovery if the cases were to proceed.

4. Reliance on Section 3(a)(10): This court has been advised prior to the hearing that defendants will rely on the section 3(a)(10) exemption based on this court's approval of the transaction.

5. Fairness Hearing: This court held a hearing before approving the fairness of the transaction.

6. Openness of Hearing: The fairness hearing was open to everyone to whom securities would be issued in the proposed exchange, as well as all parties to the lawsuits concerning the investors of Trade Partners, Inc., and the general public. All persons wishing to be heard had the opportunity address both courts.

7. Notice: Plaintiffs' counsel gave adequate notice of the hearing to all those persons to whom securities would be issued in the proposed exchange.

8. No Procedural Impediments: Neither court at the hearing imposed any procedural impediments to the appearance by those persons at the hearing to whom securities

would be issued in the proposed exchange, nor to the appearance of any person wishing to be heard.

On the basis of the foregoing findings, the court determines that the terms and conditions of the proposed settlement, including the issuance of warrants for the common stock of Macatawa Bank Corporation, are fair and that the warrants issued pursuant to the First Amended Agreement will be exempt from registration under section 3(a)(10) of the Securities Act of 1933.


Dated:  February 23, 2009          /s/  Joseph G. Scoville
                                   United States Magistrate Judge